**Marion HOLMES, Plaintiff–Appellee,**

**v.**

**Sheriff Michael SHEAHAN \* and Dr. John Raba, Defendants–Appellants.**

**No. 90–2608.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1991.

Decided April 22, 1991.

---

\* Michael F. Sheahan has replaced James O'Grady as Cook County Sheriff, and has been substitut-ed for Mr. O'Grady. *See* Fed.R.App.Pro. 43(c)(1).

James A. Graham, Chicago, Ill., for plaintiff-appellee.

Joseph D. Ryan, Asst. State's Atty., Randolph M. Johnston, Cecil A. Partee, Beth Herndobler, Office of the State's Atty. of Cook County, Chicago, Ill., for defendants-appellants.

Before WOOD, Jr., CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Marion Holmes, an inmate in the Cook County Jail, was denied medical care for a painful skin condition by Cook County authorities. Holmes brought suit under 42 U.S.C. § 1983 against the Sheriff of Cook

County and the director of the Jail's health services, both in their individual and official capacities, claiming that the defendants violated his eighth amendment rights by denying him medical treatment. On motion for summary judgment, the district court dismissed Holmes' claims against the defendants in their individual capacities, but let the official capacity claims proceed to trial. We conclude that the district court erred in not granting summary judgment to the defendants on the official capacity claims as well.

### I.

Holmes was arrested in January 1982 and held in Cook County Jail pending trial. In early 1983, while still in pretrial detention, Holmes developed sebaceous cysts on his scalp. If infected, sebaceous cysts-blocked oil glands that cause wax buildups under the skin-can be painful and eventually cause both hair loss and permanent scarring. In June 1983, a prison physician apparently misdiagnosed Holmes' condition and failed to treat it properly; consequently, his cysts continued to increase in number in the next two years, spreading throughout his scalp and down his neck and becoming infected. By early 1985, Holmes was unable to wash or comb his hair without pain, and had difficulty sleeping.

In June 1985, a prison physician referred Holmes to Dr. James McNeese, a board-certified dermatologist. McNeese correctly diagnosed Holmes' condition and prescribed the appropriate course of treatment; soon thereafter, Holmes' condition began to improve. Holmes saw McNeese again in July and early October, at which time his progress was monitored and his prescriptions were renewed. McNeese scheduled Holmes to return for another visit at the end of October.

Holmes never made this last appointment. Despite his protestations to the contrary, jail staff insisted that Holmes was not scheduled to see Dr. McNeese. In fact, prison officials did not return Holmes to McNeese for another follow-up visit until July 16, 1986, more than eight months later. In the interim, Holmes' condition worsened; the sores on his scalp reopened and cysts spread to his back and became infected, causing him much pain. In an effort to obtain treatment for his client, Holmes' attorney obtained two court orders (on April 24 and July 8) directing Jail authorities to take Holmes to a dermatologist. The County did not respond to the court orders, or even acknowledge their existence.[1]

Holmes filed suit in district court against James O'Grady, then—Sheriff of Cook County, and John Raba, Medical Director of Cermak Health Services Hospital, the County health care facility that serves the Jail. The two were sued both in their individual and official capacities. Holmes claimed that the defendants were deliberately indifferent to his serious medical needs in violation of the eighth amendment. *See Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976); *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985). Deliberate indifference, Holmes alleged, was evinced by the County's failure to maintain the personnel and procedures necessary to ensure that the health care needs of the Jail population were met.

On defendants' motion for summary judgment, the district court dismissed Holmes' suit against O'Grady and Raba in their individual capacities, but allowed the action to proceed to trial against each official in his official capacity. The court ruled that dismissal of the suit against the defendants in their individual capacity was required because Holmes tendered no evidence which suggested that Raba and O'Grady had personal knowledge of the neglect of Holmes' condition. With respect

---

**1.** Even after his visits to McNeese finally resumed in July 1986, Holmes continued to have difficulties obtaining medical care. For seven months in 1986 and 1987, after his dermatological treatment resumed, Jail personnel failed to administer Holmes his medication on a regular basis.

to the official capacity claim, the district court correctly observed that, in order to succeed, Holmes had to prove that an official policy or custom of the Sheriff's Department or Cermak Health Services was responsible for Holmes' mistreatment. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). The district court ruled that Holmes had indeed presented evidence sufficient to create a factual dispute concerning this question; according to the court, the very fact that Holmes had been denied medical care for eight months was sufficient to give rise to the inference that a County custom or policy was the cause of Holmes' constitutional injury. As a result, defendants' motion for summary judgment on Holmes' official capacity claim was denied.

Immediately prior to trial, counsel for both parties engaged in a protracted debate over whether Sheriff O'Grady would appear at trial. Holmes intended to call O'Grady as his first witness, but the Cook County State's Attorney insisted that O'Grady would be unavailable at that time. The district court entered the fray just days before the trial was to begin, and on June 28 ordered O'Grady to appear for trial, which was to begin on July 2. O'Grady failed to appear. The district court responded by entering judgment against O'Grady on the issue of liability.

The case then proceeded to trial. After withstanding the County's motion for directed verdict—which tracked its summary judgment motion and argued that Holmes had failed to establish the existence of a policy or custom that caused Holmes to be denied medical care—a jury returned verdicts against Dr. Raba and Sheriff O'Grady in the amount of $10,000.

Defendants now appeal. They allege that the district court erred in denying both their motions for summary judgment and directed verdict on the official capacity § 1983 claim, in entering judgement against Sheriff O'Grady on the issue of

liability for his failure to appear for trial, and in charging the jury with instructions that did not accurately explain the legal terms "deliberate indifference" and "policy, practice, or custom." We hold below that the district court should have granted defendants' motion for summary judgment on the § 1983 official capacity claims and therefore dismissed Holmes' suit in its entirety; as a result, we do not reach defendants' other arguments.

## II.

■ In order to maintain a § 1983 claim against the defendants in their official capacities—in essence, to maintain a claim against the County itself—Holmes must demonstrate that the County's official policy or custom was the cause of his constitutional injury. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 824–25 n. 8, 105 S.Ct. 2427, 2436 n. 8, 85 L.Ed.2d 791 (1985) (requiring "affirmative link" between municipal policy and constitutional violation); *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (municipal policy must be "moving force" behind constitutional deprivation).

■ The constitutional deprivation complained of here is the denial of medical care. The government's failure to provide medical care for prison inmates constitutes an eighth amendment violation and is thus actionable under § 1983 when it evinces "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). Detainees awaiting trial are similarly afforded *Estelle*-like protection against medical mistreatment under the due process clause. *See K.H. v. Morgan*, 914 F.2d 846, 849 (7th Cir.1990); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572–74 (11th Cir.1985). To cast this notion in the language of tort, the County has an affirmative duty "to provide persons in its custody with a medical care system that meets minimal standards of adequacy." *Benson v. Cady*, 761 F.2d 335, 339 (7th

Cir.1985) (quoting *Wellman v. Faulkner,* 715 F.2d 269, 271 (7th Cir.), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984). We note, however, that a § 1983 plaintiff must demonstrate more than mere negligence on the part of government personnel in the diagnosis or treatment of a medical condition: a complaint alleging no more than "an inadvertent failure to provide adequate medical care" does not state a valid claim of medical mistreatment under *Estelle.* 429 U.S. at 105, 97 S.Ct. at 291–92.

Holmes has tendered a distinct type of medical mistreatment claim. He contends that the Cook County Jail and Cermak Health Services deprived him of his constitutional rights not merely by failing to treat him, but "by failing to institute systems or procedures to ensure that 1) patients in dire need of regular treatment are not forgotten, 2) daily medical providers get accurate information, and 3) court orders mandating medical treatment are followed." Memorandum Opinion and Order, Jan. 18, 1990, at 9. He also alleges that the County failed to properly train Jail employees to attend to the medical needs of inmates.[2]

■ Holmes' claims, then, sound in inaction—that is, the County's failure to institute the policies and procedures necessary to ensure that prison inmates receive appropriate medical care. We have previously held that deliberate indifference to inmates' medical needs may indeed be demonstrated by proving "that there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Benson,* 761 F.2d at 341 (quoting *Wellman,* 715 F.2d at 272). The County's failure to train its employees is similarly actionable under a deliberate indifference standard. In making failure-to-train claims, plaintiffs must establish that a municipality's training program is inadequate, and that "such inadequate training can justifiably be said to represent 'city policy'". *Canton v.*

*Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1988). The latter holds true when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.*

### III.

■ Turning to Holmes' pleadings, we believe the district court erred in not granting the County's motion for summary judgment on Holmes' § 1983 official capacity claim. We find the record barren of evidence which suggests that inadequate procedures, a failure to train, or any other County policy or custom caused Holmes to be denied medical care.

Holmes relies on the following to support his allegations. First, he points to the fact that he was denied medical care and that he was for some uncertain period of time not administered medication prescribed him by McNeese. Second, he notes that the County failed to heed court orders directing officials to procure treatment for him. Holmes points to the deposition testimony of Dr. Raba, director of Cermak Health Services Hospital, to illustrate that this noncompliance was the product of a County policy of deliberate indifference to the disposition of court orders. Raba was asked whether Cermak had procedures to ensure that it received medical treatment orders issued by the courts. He responded that the Health Service did not, as it was the responsibility of the authorities to whom the court orders were addressed—the Sheriff's Department or the Cook County Department of Corrections (CCDC)—to see that the mandates were delivered to Cermak. Raba explained that Cermak was indeed prepared to act upon court orders as soon as they had been delivered by the appropriate correctional authorities. Holmes contends that Cermak's policy of disclaiming responsibility for court orders until correctional authorities have delivered

---

**2.** The County contends that Holmes never raised a failure to train claim in his complaint.

This is incorrect. *See* ¶¶ 23–24, Third Amended Complaint.

them is deficient; he maintains that Cermak's failure to promulgate procedures that would ensure that it actually *receives* orders issued by the state courts—in essence, Cermak's failure to bypass the Sheriff and CCDC and snatch medical treatment orders out of the hands of the state court clerks who issue them—constitutes deliberate indifference to the medical needs of inmates. Raba was also asked whether he thought the County should implement special procedures that would identify prisoners who missed their medical appointments (as Holmes did). Raba replied that he did not see the need for any procedures above and beyond those already in place. Holmes suggests that this comment, too, is evidence of deliberate indifference.

We find this evidence insufficient to create any genuine issues of material fact that render summary judgment inappropriate. As an initial matter, none of the evidence Holmes presented supports his failure-to-train allegation. That claim must therefore fail as it constitutes but a conclusory allegation. The evidence in the record that speaks to Holmes' *Estelle* claim is unpersuasive as well. That Holmes was denied access to a physician and to medication, though egregious and unfortunate, does not legitimately give rise to the inference that the County maintained inadequate procedures which were the proximate cause of his injury. Similarly, the mere fact that court orders addressed to the Sheriff directing that Holmes be treated were not heeded is insufficient to establish that either a *policy* of deliberate indifference to judicial mandates or any conscious decision on the part of policymakers was behind the neglect of the orders in question.

Neither is Dr. Raba's testimony of particular aid to Holmes. Holmes set out to prove that a municipal policy or custom of deliberate indifference was the cause of the County's noncompliance with the court or-

ders directing that Holmes receive medical treatment. Raba's statements are unhelpful in this regard. The court orders directing that Holmes be treated were addressed to the Sheriff's Department. The record indicates that those orders were never relayed to Cermak personnel as they should have been. The County's failure to comply with the court orders should thus be placed at the Sheriff's doorstep, not at Cermak's.[3] Raba's statements are of little value because they speak only to Cermak's procedures; they shed no light on the critical question whether the Sheriff's failure to deliver the court orders to Cermak was the product of a policy or custom of deliberate indifference to the disposition of court orders.

Finally, we note that the County presented evidence of the existence of procedures which are designed to prevent inmates with medical needs from falling through the cracks as Holmes unfortunately did. Inmates have access to nurses and paramedics on their tiers on a daily basis to whom they can report missed appointments; presumably, proper follow-up would quickly detect mix-ups such as that which occurred to Holmes. (Indeed, it would seem that a simple phone call to McNeese's office would have discovered that Holmes did, in fact, have an appointment with him.) Each division of the Cook County jail is also assigned a physician who is charged with regularly monitoring the charts and prescriptions of inmates receiving medical care. As a further backstop, the jail has an internal grievance mechanism for inmate complaints. Obviously, these measures all failed in Holmes' case, as he went for eight months without treatment of his skin condition. But without more evidence pointing to deficiencies in these procedures, Holmes' story suggests a problem with personnel and the implementation of policy,

---

**3.** Holmes seems to suggest that Cermak has a duty to ensure that it receives medical treatment orders issued by the state courts to the Sheriff and CCDC. We disagree. Court orders addressed to the Sheriff are the Sheriff's legal responsibility, not Cermak's. Cermak's failure to disregard this chain of authority does not constitute a breach of any duty and certainly

does not rise to the level of deliberate indifference to the medical needs of inmates.

In the future, however, inmates like Holmes who find themselves denied medical care might be advised to serve court orders upon both the Sheriff *and* Cermak so as to maximize the possibility that the orders will not go unheeded.

or perhaps a failure to train (which he has not proven), but not a problem with County policy itself.[4]

### IV.

To prevail, Holmes needed to prove that gross and systemic deficiencies in Cermak's procedures or the procedures of the Sheriff's Department were the cause of his injuries. With the evidence detailed above, he failed to do so. In the absence of evidence sufficient to support a jury verdict in Holmes' favor, *see Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986), we conclude that the district should have granted the defendants' motion for summary judgment in its entirety. We therefore reverse and remand to the district court with instructions that judgment be entered for the defendants.

---

**4.** Under *Monell,* municipal liability may also attach if § 1983 plaintiffs can prove that the conduct complained of is not the function of a municipal policy, but of a "[p]ractice ... so permanent and well settled as to constitute a 'custom or usage' with the force of law." 436 U.S. at 691, 98 S.Ct. at 2036 (quoting *Adickes v. S.H. Kress,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). Holmes has not presented evidence of the County's neglect of other inmates. With the facts of his case alone, he has not established that it was the County's "persistent and widespread" practice, *id.,* to neglect the medical needs of inmates. *See Gray v. Dane County,* 854 F.2d 179, 183 (7th Cir.1988) (§ 1983 plaintiff must allege a "pattern or series of incidents of unconstitutional conduct" to establish the existence of an entrenched practice that has the effective force of a formal policy.)