Odie M. ROBLES, Plaintiff–Appellant,

v.

CITY OF FORT WAYNE, Stanley M. Stanford and Pee Tee, Incorporated, doing business as Sweet Pete's Tavern, Defendants–Appellees.

No. 96–2302.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1996.

Decided May 12, 1997.

Chris K. Starkey (argued), Fort Wayne, IN, for Plaintiff–Appellant.

J. Timothy McCaulay (argued), Helmke, Beams, Boyer & Wagner, Fort Wayne, IN, for City of Fort Wayne.

Ronald James, Pee Tee, Inc., Fort Wayne, IN, for Pee Tee, Incorporated.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Odie M. Robles appeals from the district court's decision granting summary judgment to the City of Fort Wayne on his claim under 42 U.S.C. § 1983. In that claim, Robles alleges that Fort Wayne police officer Stanley M. Stanford violated his rights under the Fourth, Fifth, and Fourteenth Amendments while working off duty as a security officer at Sweet Pete's Tavern in Fort Wayne. According to Robles, the City is liable for Stanford's actions because it failed to adequately train its police officers for such off-duty security work, and because it had a policy and practice of failing to discipline its officers after citizen complaints were lodged against them. The district court concluded that Robles had failed to establish that the constitutional deprivations alleged were occasioned by a custom, policy, or practice of the City. Robles contests that conclusion here. He also challenges the district court's decision to dismiss without prejudice his state law claims against the City once summary judgment was entered on the section 1983 claim. For the following reasons, we affirm the district court's judgment.

I.

On the evening of April 22 and the early morning hours of April 23, 1994, Stanford was working in an off-duty capacity as a security officer at Sweet Pete's Tavern in Fort Wayne. Because the rules and regulations of the Fort Wayne Police Department authorize officers to wear their police uniforms while performing such off-duty work, Stanford was in uniform at the time. Robles entered the tavern late in the evening on April 22. He was carrying a handgun along with a permit for that gun. Trouble ensued when Robles attempted to leave the tavern in the early morning hours of April 23. According to Robles, Stanford prevented him from leaving the tavern, took his handgun

without his consent, and threw him to the tavern's floor. Robles was later taken to a local hospital by two on-duty police officers after complaining of pain in his arms, back, and leg. Robles maintains that as a result of the encounter with Stanford, he incurred damages in the form of medical bills, pain and suffering, and lost wages.

On April 25, 1994, Robles filed a citizen's complaint addressed to Stanford's conduct with the Fort Wayne Police Department. The Department's Internal Affairs Division investigated that complaint. After considering Robles' allegations, the written statements provided by Stanford and another officer, and oral statements from Stanford and the owner of Sweet Pete's Tavern, the Internal Affairs Division forwarded a two-page report on the incident to Assistant Police Chief Daniel Hannaford. On May 20, 1994, Hannaford determined that Robles' complaint against Stanford had not been sustained.

On July 24, 1994, Stanford completed an affidavit for probable cause, sworn to before a prosecutor, alleging that Robles had committed the crimes of resisting law enforcement and public intoxication on April 23, 1994. After charges to that effect were filed, a warrant for Robles' arrest issued, and he was arrested pursuant to that warrant on September 13, 1994. The State of Indiana eventually agreed to dismiss the pending charges, however, in return for Robles' agreement to comply with certain specified conditions, which included the performance of community service.

On May 31, 1995, Robles filed the instant action in Indiana state court against the City of Fort Wayne, Stanford, and Pee Tee Incorporated, the owner of Sweet Pete's Tavern. The City promptly removed the case to federal court, where Robles filed an amended complaint. That complaint alleged section 1983 claims against the City and Stanford, and common law claims against all three defendants. The City moved for summary judgment on the section 1983 claim asserted against it, arguing that Robles could not

establish that any violation of his constitutional rights resulted from a custom, policy, or practice of the City. The district court agreed and granted summary judgment on that claim. The court then dismissed the state law claims against the City without prejudice to Robles' refiling of those claims in state court. At the time, however, Robles' section 1983 claim against Officer Stanford and his state law claims against Stanford and Pee Tee remained before the district court.[1] Robles and Stanford then jointly petitioned the court to remand the remaining claims to state court. The district court granted that petition, enabling Robles to take this appeal.

## II.

Robles maintains that his constitutional rights were violated during the April 23, 1994 encounter when Stanford seized his personal property (the handgun), used excessive force against him, and falsely arrested him. He attempts to attribute these deprivations to the City of Fort Wayne by alleging that Stanford's conduct resulted from either of two municipal policies. First, Robles asserts that the City failed to adequately train and to supervise its police officers with respect to off-duty security positions such as the one held by Stanford at Sweet Pete's Tavern. He also contends that the City investigated citizen complaints against its police officers in such a way as to exonerate the officer, meaning that the City did not adequately discipline its officers for past misconduct. In its summary judgment motion, the City did not suggest that Robles could not establish a violation of his constitutional rights if his version of the incident were believed. It argued instead that Robles would be unable to show that any constitutional violation resulted from a custom or policy of the City. The district court agreed and granted the City's motion. We review that decision de novo. *Valance v. Wisel,* 110 F.3d 1269, 1274–75 (7th Cir.1997).

Initially, it is clear that the City of Fort Wayne cannot be held responsible for

---

1. Pee Tee never appeared while the case was in federal court, but Robles did not seek a default

judgment against that defendant.

Stanford's actions under section 1983 simply because it employed him as a police officer at the time. By rejecting liability under a *respondeat superior* theory in *Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), the Supreme Court held that more than the employment relationship between the alleged tortfeasor and the City is required before the municipality will be subject to liability. *See also Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122, 112 S.Ct. 1061, 1067, 117 L.Ed.2d 261 (1992); *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994).[2] It is only when the constitutional deprivation results from a municipal custom or policy that the City will be liable. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct. 2427, 2432–33, 85 L.Ed.2d 791 (1985) (plurality opinion); *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. In other words, before Robles can recover from the City, he must establish a direct causal link between a custom or policy of the City and the unconstitutional conduct that he alleges. *Board of County Comm'rs v. Brown*, — U.S. —, ——— ——, 117 S.Ct. 1382, 1388–89, 137 L.Ed.2d 626 (1997); *Tuttle*, 471 U.S. at 823, 105 S.Ct. at 2436.

## A.

■ Robles' first contention is that the constitutional deprivation here resulted from the City's failure to train Stanford and its other officers for off-duty security positions like that held by Stanford at Sweet Pete's Tavern. Yet there are only "limited circumstances" in which a "failure to train" will be characterized as a municipal policy under section 1983. *Brown*, — U.S. at ——, ——, 117 S.Ct. 1382, 1390; *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir.1993); *see also Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir.1997). The Supreme Court held in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989), that "the inadequacy of police training may serve as the basis for [section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Although we have described this standard as somewhat "elusive" (*Cornfield*, 991 F.2d at 1327), the Supreme Court in *City of Canton* observed that the standard is met where, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is ... obvious," and the existing inadequacy is "likely to result in the violation of constitutional rights." 489 U.S. at 390, 109 S.Ct. at 1205. A municipality would thus evince a deliberate indifference to the constitutional rights of its citizens by failing to train its employees "with respect to a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Cornfield*, 991 F.2d at 1327; *see also Brown*, — U.S. at ——, ——, 117 S.Ct. 1382, 1391; *City of Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10. It would also be deliberately indifferent if it failed to provide further training after learning of a pattern of constitutional violations involving the exercise of police discretion. *City of Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10; *Cornfield*, 991 F.2d at 1327; *see also Brown*, — U.S. at ——, ——, 117 S.Ct. 1382, 1390; *Hirsch*, 40 F.3d at 904. Under either scenario, the finding of "deliberate indifference" is derived from the City's failure to act in the face of "actual or constructive notice" that such a failure is likely to result in constitutional deprivations. *Cornfield*, 991 F.2d at 1327; *see also Roach*, 111 F.3d at 549; *Donovan v. City of Milwaukee*, 17 F.3d 944, 955 (7th Cir.1994).

Robles does not dispute that the City adequately trained its police officers with re-

---

2. At the same time, it also is clear that the City is not automatically off the hook by virtue of the fact that the conduct alleged here occurred while Stanford was working off duty as a private security officer, rather than while he was on duty doing police work for the City. Our cases indicate that a municipal police officer may, in an appropriate circumstance, be said to have acted under color of state law even while working off

duty as a private security officer. *E.g., Pickrel v. City of Springfield, Illinois*, 45 F.3d 1115, 1118 (7th Cir.1995); *Greco v. Guss*, 775 F.2d 161, 168 (7th Cir.1985). In this case, the City did not assert in moving for summary judgment that Stanford was not acting under color of state law during his encounter with Robles at Sweet Pete's Tavern. We therefore assume that he was.

spect to on-duty citizen encounters. For example, Robles does not suggest that the City failed to advise its officers against the use of excessive force, or that it failed to train its officers as to when an arrest may be made or when it may be appropriate to confiscate a firearm from an individual resisting the officer's authority. Indeed, if Stanford had acted in the same way upon encountering Robles while on duty, Robles apparently would not suggest that the officer's conduct in that situation could be linked to any inadequacy in the City's training program. Yet because the constitutional violations alleged here occurred while Stanford was working off duty as a private security officer, Robles contends that those violations were caused by the City's failure to adequately train Stanford for such off-duty work.

Being somewhat puzzled by Robles' theory, we inquired of his counsel at oral argument as to what additional training the City should have provided in order to prepare otherwise adequately trained on-duty police officers for off-duty security work. Counsel conceded that the relevant constitutional standards do not change when the police officer works in an off-duty capacity, but he insisted that the City should have instructed its officers that they would be held to the same constitutional standards while performing that type of work. Its failure to provide such an instruction, according to Robles, caused Stanford to violate his constitutional rights.

It is not obvious to us, however, that such an instruction would be required in order to avoid having City police officers violate the constitutional rights of citizens with whom they come into contact while performing off-duty security work. *See City of Canton,* 489 U.S. at 390 & n. 10, 109 S.Ct. at 1205 & n. 10; *Donovan,* 17 F.3d at 955. Indeed, the instruction that Robles would have the City give its officers seems to us self-evident. We therefore believe that the City's failure to provide further training in this circumstance would rise to the level of deliberate indifference only if it was aware of a series of constitutional violations occurring while its police officers were performing off-duty security work. *See Harris v. City of Marion,*

*Indiana,* 79 F.3d 56, 59 (7th Cir.1996); *Hirsch,* 40 F.3d at 904–05; *Donovan,* 17 F.3d at 956; *Cornfield,* 991 F.2d at 1327; *see also Palmquist v. Selvik,* 111 F.3d 1332, 1344–46 (7th Cir.1997). But Robles has produced no evidence of a pattern of similar violations or of the City's awareness of that pattern. Thus, he cannot show that the City was deliberately indifferent to any need for the further training he espouses.

■ Robles further asserts that the City failed to supervise those police officers who were employed as private security officers. To support that claim, he points to a "Release/Hold Harmless Agreement" that the City required its officers to sign in order to perform such off-duty work. Under that agreement, a police officer and his off-duty employer were required to release the City from any liability that may be incurred as a result of that work. Robles' theory apparently is that by requiring such a release, the City sent a message to its officers that it was not concerned with how they behaved when working in an off-duty capacity. According to Robles, this engendered lawless behavior by the officers in their off-duty employment, as evidenced by Stanford's conduct in this case.

To the extent Robles relies on the release to support his "failure to train" claim, it is of little help, because the release requirement does not alone establish that the City was aware of a pattern of constitutional violations committed by City police officers in the course of their off-duty security work. Robles has not attempted to show, for example, that the City required its officers and their employers to execute the release because of earlier incidents in which the City had been held responsible for the unconstitutional conduct of an off-duty officer. Thus, the release does not establish that the City was deliberately indifferent to a need for further training.

■ Furthermore, even if we were to consider the release requirement to be a City policy in and of itself, the City still would be entitled to summary judgment because Robles has not established a causal link between that policy and Stanford's conduct in

this case. *See City of Canton,* 489 U.S. at 385, 109 S.Ct. at 1202–03 (must be a "direct causal link" between the municipal policy and the constitutional deprivation); *Tuttle,* 471 U.S. at 823, 105 S.Ct. at 2436 (same). Robles produced no evidence to support the theory that the City's release requirement engenders unconstitutional behavior by officers performing off-duty security work. Indeed, there is no evidence other than the single incident alleged here of a City police officer committing a constitutional violation while performing off-duty security work. The Supreme Court made clear in *City of Oklahoma City v. Tuttle* that in circumstances like these, more than a single incident is required before a municipality will be subject to liability under section 1983: "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." 471 U.S. at 824, 105 S.Ct. at 2436–37; *see also Donovan,* 17 F.3d at 954–55. Because Robles produced no evidence to supplement what occurred here, his claim based on a failure to train and to supervise police officers for off-duty security work must fail.

### B.

Robles next argues that the City had a policy of investigating citizen complaints against its police officers in such a way as to exonerate the officer. He contends that as a result of this policy, Fort Wayne police officers were not adequately disciplined for past misconduct, which therefore encouraged further misconduct on their part in the future. To establish this alleged policy, Robles relies on the City's handling of his own citizen complaint and on four other instances in which citizen complaints were filed against Officer Stanford. The incidents at issue in two of the complaints occurred before the encounter between Stanford and Robles at Sweet Pete's Tavern. Neither of those complaints involved allegations of excessive force, and both addressed on-duty as opposed to off-duty conduct. After conducting internal investigations of those complaints,

City officials determined that the evidence did not sustain the allegations. The two other complaints addressed incidents that occurred subsequent to the Robles–Stanford encounter. Those complaints involved claims of excessive force, and one related to conduct occurring while Stanford was off duty, but not while he was working as a private security officer. The charge relating to the on-duty incident was not sustained after an internal investigation, but a City official sustained the claim relating to the off-duty conduct and directed that a petition for termination of Stanford's employment be filed by the City Attorney. After Stanford ultimately was convicted of a misdemeanor battery charge arising from this off-duty incident, the City's Board of Safety terminated his employment.

Initially, we note that there is no evidence that the City had an express policy of investigating citizen complaints so as to exonerate the officer. In the absence of an express policy, Robles must establish " 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.' " *Roach,* 111 F.3d at 548 (quoting *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995)). We do not believe that a reasonable jury could conclude from the scant evidence here that the City of Fort Wayne had a widespread practice of investigating citizen complaints against police officers in such a way as to exonerate the officer. Indeed, the fact that one of the five complaints in this record was sustained after an internal investigation, resulting in the termination of Stanford's employment, belies the existence of such a practice. In light of the sustained complaint, Robles would be required to produce substantially more evidence than he did here before a reasonable jury could conclude that the City employed the "widespread practice" alleged. *See Roach,* 111 F.3d at 549. Because Robles has not shown that such a policy existed at all, we need not consider whether he established a causal link between that policy and the conduct of Officer Stanford here.

For these reasons, the district court properly entered summary judgment for the City on Robles' claims under 42 U.S.C. § 1983.

## III.

■ Robles finally argues that the district court abused its discretion when it dismissed his state law claims against the City without prejudice after granting summary judgment on the section 1983 claim against that defendant. According to Robles, the district court should have retained jurisdiction over the state law claims even after the federal claim had been resolved because his federal and state claims against Stanford and Pee Tee remained in federal court. Robles asserts that by dismissing his state law claims against the City without prejudice, the district court required him to litigate claims arising from the same core of operative facts in two forums.

Yet whatever force this argument may have had at the time of the dismissal was lost when Robles agreed that all claims against Stanford and Pee Tee should be remanded to state court. Indeed, the district court remanded those claims on April 23, 1996, pursuant to the parties' joint petition for a remand. After that remand, Robles no longer was required to litigate his related claims in separate forums. Instead, all of his claims (including the state law claims against the City which he has since refiled in state court) are currently pending in a single forum. Thus, he cannot now claim that the district court should have retained jurisdiction over the state law claims brought against the City.

■ Recognizing that his argument for retention of the state claims has little force after the remand of the remaining claims, Robles alternatively argues that because those claims were originally filed in state court and were removed to federal court by the City, the district court should have remanded the state claims upon granting summary judgment on the federal claim, rather than dismissing those claims without prejudice. Yet Robles has not shown how the district court's decision to dismiss the claims may have affected him adversely. He concedes, for example, that the statute of limitations did not bar him from refiling those claims in state court, and in fact, the claims have been refiled. *Cf. Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351–52, 108 S.Ct. 614, 620, 98 L.Ed.2d 720 (1988) (suggesting that remand may be preferable to dismissal without prejudice "when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction"). The Supreme Court has indicated that a remand of state claims originally removed from state court "may best promote the values of economy, convenience, fairness, and comity" even where the applicable statute of limitations has not expired, but it is clear that a district court retains the discretion to dismiss as well as to remand such claims. Id. at 353–54, 108 S.Ct. at 621 ("petitioners concede, as they must, that a federal court has discretion to dismiss a removed case involving pendent claims"); *see also Decatur Memorial Hosp. v. Connecticut Gen. Life Ins. Co.,* 990 F.2d 925, 927–28 (7th Cir. 1993) (removed state law claim could be dismissed without prejudice or remanded once federal claim had been resolved); *Rothner v. City of Chicago,* 879 F.2d 1402, 1406 (7th Cir.1989) (same). In the present case, Robles has not established how the district court may have abused that discretion in dismissing the state claims without prejudice rather than remanding them to state court. We thus have been provided no basis for disturbing the district court's decision.

Affirmed.