In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 01-2809

CHESTER BOYCE,

*Plaintiff-Appellant,*

v.

LIEUTENANT MOORE, Division 1,
STANLEY SERWINSKY, Executive Director
of Cook County Department of Corrections,
JEFFREY MALEK, Division 1, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 3703—**Sidney I. Schenkier**, *Magistrate Judge.*

---

ARGUED OCTOBER 15, 2002—DECIDED DECEMBER 27, 2002

---

Before POSNER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.*  Chester Boyce, a prisoner incarcerated at the Cook County Department of Corrections ("CCDOC"), filed a pro se complaint against Lieutenants Jeffrey Malek and Leroy Moore, as well as the Executive Director of CCDOC ("Executive Director") and other individuals. Proceeding under 42 U.S.C. § 1983, Mr. Boyce alleged that the defendants violated his Eighth Amendment rights by failing to take action to protect him from

attacks by fellow inmates and by refusing to provide medical care. After the completion of discovery, the district court granted the defendants' motion for summary judgment on all claims. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Mr. Boyce was incarcerated in Division 1, Tier C-4, of CCDOC from February 1993 to June 8, 1994, and in Division 1, Tier H-1, from June 8, 1994 to June 30, 1994. Lieutenants Moore and Malek were co-supervisors in Division 1 of CCDOC during 1994; Lieutenant Moore was the senior supervisor. In June 1994, there were three different shifts in Division 1, Tier C-4. Prisoners could make complaints to any officer on these different shifts. Complaints could also be made to clergy and paramedics, who visited the tiers on a regular basis, and to social workers, who visited the tiers by request. In June 1994, there was no protective custody in Division 1.

Reading the record in the light most favorable to Mr. Boyce, on June 1, 1994, he was attacked and beaten by other inmates for ten to fifteen minutes upon returning to his cell. The attackers threatened to kill Mr. Boyce if he reported the attack to officials. As a result of the attack, Mr. Boyce's eyes became swollen, and he bled from his left eye and his mouth. Mr. Boyce does not know the identity of the attackers, nor does he know the reason for the attack. Mr. Boyce did not file a grievance with the officer on duty when he made his check, and there is no mention of the incident in the Tier C-4 logbook for that day.

Although Mr. Boyce noticed that, after the attack, his eyes were growing gradually weaker, he did not seek medical attention between June 1 and June 7, 1994. On June 3, 1994, Officer Brown approached Mr. Boyce and inquired about his condition; Mr. Boyce responded that there was no problem. The logbook contains an entry on June 3, 1994, stating "Several inmates told [Reporting Officer] there is a conflict brewing on the [C-4] tier," R.95, Ex.F at 26. The entry does not mention Mr. Boyce, and there is no evidence that any defendant saw the entry.

On June 7, 1994, Mr. Boyce informed an officer during lockup that he desired to be moved off of Tier C-4; an entry was made in the logbook that states, "Boyce, Chester . . . refuses to remain on the tier. Supervisor notified. Appeared to have swollen eyes. Boyce would not elaborate on condition." *Id.* at 27. The logbook further contains a June 8, 1994, entry that states, "[Reporting Officer] was informed by Officer Ware that inmate Boyce, Chester, refused to lock up. Officer Ware said inmate eyes appear to be swollen. Inmate would not inform officer as to how it happened. Inmate Boyce was then removed to Cermak." *Id.* at 29. Mr. Boyce was treated by a physician at Cermak[1] on June 8, 1994, and returned to CCDOC that day. Upon his return, because Mr. Boyce refused to return to Tier C-4, he was moved to Tier H-1 on Lieutenant Malek's orders. There is no evidence that Mr. Boyce requested further protection because of any specific assault or threat.

On June 14, 1994, Mr. Boyce was attacked by fellow inmates in the H stairwell while he was returning from yard exercise. An inmate in Division 1, Tier H-1, would

---

[1] Cermak is a separate entity from CCDOC and an extension of Cook County Hospital.

have been excused from yard exercise, if he had a medical reason, a physician's appointment or a fear of assault. Such an inmate would be placed in a holding cell instead of going to the yard. Mr. Boyce had requested to be excused from yard exercise; but, because he had given no reason for the request, it had been denied. No inmates from Tier C-4 participated in yard exercise with the Tier H-1 inmates. Mr. Boyce did not file a grievance, nor does the logbook mention any incidents involving Mr. Boyce on that day; nevertheless, he immediately received medical attention from a paramedic in the dispensary.

On June 30, 1994, Mr. Boyce was moved from Division 1 to Division 6, and he went to sick call several times. No officer refused to send him to the dispensary for medical attention, and Mr. Boyce was seen at Cermak Health Services on July 14, 1994. Although Mr. Boyce has undergone multiple eye surgeries, he alleges that he lost complete sight in his left eye in early September 1994.

CCDOC policy mandates that, when an officer finds an inmate in need of medical attention, he must notify a supervisor, who in turn must notify a paramedic. The paramedic makes the ultimate decision regarding whether treatment is necessary; the approval of jail staff is not required. Mr. Boyce has not presented evidence of any policy or any action by the defendants to deny inmates access to Cermak. Nor has he alleged knowledge of anything the defendants did or said to prevent him from receiving adequate medical care.

## B. District Court Proceedings

The district court determined that Mr. Boyce had failed to present sufficient evidence to withstand summary judgment with regard to Lieutenants Moore and Malek.

Mr. Boyce had relied on the existence of three notations in the jail logbooks. He contended that these entries established knowledge on the part of Lieutenants Moore and Malek as to his dangerous predicament. The district court, however, found no evidence that these defendants were required to review the logbooks or that they in fact did review them. Noting that Mr. Boyce had not presented any evidence that Lieutenant Malek's actions were unreasonable, it concluded that Lieutenant Malek's transfer of Mr. Boyce from Tier C-4 to Tier H-1 did not constitute deliberate indifference. R.100 at 13-14. Finally, the district court granted summary judgment in favor of the Executive Director because it could not find that the absence of protective custody was a per se constitutional violation, nor could it find a pattern of violations through which to impute knowledge to CCDOC. R.100 at 16.

## II

## DISCUSSION

We review the district court's decision to grant summary judgment de novo. *See Mauler v. Bayfield County*, 309 F.3d 997, 1000 (7th Cir. 2002); *O'Neal v. City of New Albany*, 293 F.3d 998, 1003 (7th Cir. 2002). The Eighth Amendment requires prison officials to "'take reasonable measures to guarantee the safety of the inmates'" and to protect them from harm at the hands of others. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *see Henderson v. Sheahan*, 196 F.3d 839, 844 (7th Cir. 1999) (noting that the Eighth Amendment requires states to "ensure that inmates receive adequate food, clothing, shelter, protection, and medical care" (citation omitted)). Liability must be predicated on a finding of "'deliberate indifference' to

inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)); *see Sanville v. McCaughtry*, 266 F.3d 724, 735 (7th Cir. 2001) (finding negligence insufficient to establish deliberate indifference); *Henderson*, 196 F.3d at 844 (requiring "deliberate indifference" for Eighth Amendment violation). Therefore, a prison official may be found liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Sanville*, 266 F.3d at 734 (quoting *Farmer*'s requirement that official be aware of facts supporting inference of substantial risk of harm and that he actually draw the inference); *Delgado-Brunet v. Clark*, 93 F.3d 339, 345 (7th Cir. 1996) (same). Moreover, a supervisor cannot be held liable in a § 1983 action unless the individual was personally involved in the wrongful conduct such that he or she caused or participated in the alleged violation. *See Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals. *See id.* at 103; *see also Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002) (noting that deliberate indifference to prisoners' serious medical needs violated the Eighth Amendment (citing *Estelle*, 429 U.S. at 104-05)). To create a violation by failing to provide medical care, there must be "deliberate indifference" to a substantial risk of harm. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000) (citing *Farmer*, 511 U.S. at 837). This standard requires the plain-

tiff to establish that: (1) his condition was objectively serious,[2] and (2) state officials acted "with deliberate indifference to his medical needs, which is a subjective standard." *Id.*; *see Walker*, 293 F.3d at 1037 (explaining that deliberate indifference culpability requires more than negligence but less than "purpose of causing harm or . . . knowledge that harm will result").

## A. Lieutenant Moore

Mr. Boyce submits that his injuries and predicament were well-documented in the jail logbook and that a reasonable jury could conclude that each lieutenant reviewed the logbook as part of his duties. To survive a motion for summary judgment, a nonmoving party must present credible evidence on all matters upon which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). However, Mr. Boyce has presented no evidence in the record to permit a jury to conclude that supervisors were required to review the logbooks or that it was Lieutenant Moore's practice to do so. Moreover, Mr. Boyce has failed to produce evidence that Lieutenant Moore actually had knowledge of his plight. Without more, the logbooks do not create a material dispute that Lieutenant Moore was aware of the relevant facts required by *Farmer*, 511 U.S. at 837, and he may not be held liable for deliberate indifference to an unknown threat. At most, any failure to review the logbooks would be characterized as negligence, which is insufficient to constitute deliberate indifference. *See Washington v. Laporte County Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002)

---

[2] The district court assumed that the eye injury was objectively serious, *see* R.100 at 19, and we make the same assumption.

("[O]rdinary negligence by prison officials is not enough to show an Eighth Amendment violation." (citing *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994))); *see Walker*, 293 F.3d at 1037 (stating that more than negligence is required).

Mr. Boyce invites our attention to his original complaint and deposition for evidence that an officer informed Lieutenant Moore of his injuries and that Lieutenant Moore's reply was a callous racist remark. However, this incident was reported to Mr. Boyce through his cellmate who had overheard the alleged comment. Federal Rule of Civil Procedure 56(e) requires that affidavits supporting a motion in opposition to summary judgment must set forth facts that would be admissible in evidence. No exception to the hearsay rule operates to permit admission of Mr. Boyce's cellmate's repetition of the statement. Consequently, the statement is inadmissible and may not be considered in determining the correctness of the grant of summary judgment. *See Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998) (" '[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.' " (quoting *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997))). In short, we do not believe that the record, viewed in a light most favorable to Mr. Boyce, contains sufficient evidence to permit a jury verdict for Mr. Boyce. Indeed, even if Lieutenant Moore had become aware of the situation in Tier C-4, there would still be an insufficient basis to sustain such a jury verdict because there still would be no showing of deliberate indifference.

Mr. Boyce's Eighth Amendment claim for denial of medical care is predicated on the same grounds that we just have noted as insufficient with respect to the deliberate indifference to a substantial risk of harm claim. The alleged racial remark indicating knowledge of the injury is

barred by the hearsay rule, and the existence of references in the logbooks does not suffice to prove that Lieutenant Moore reviewed them and had any knowledge of Mr. Boyce's condition. Moreover, the district court correctly reasoned that, even if Lieutenant Moore had reviewed the entry, the comment "eyes appear to be swollen" would not present evidence of an obvious excessive risk to Mr. Boyce's health sufficient to infer knowledge. R.100 at 19. *See Sherrod*, 223 F.3d at 611 ("[O]fficial must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" (citing *Farmer*, 511 U.S. at 837)). Consequently, the district court correctly granted summary judgment to the defendants on Mr. Boyce's claim of a violation of his right to receive adequate medical treatment.

### B. Lieutenant Malek

Mr. Boyce points out that Lieutenant Malek transferred Mr. Boyce to Tier H-1 instead of to protective custody. We cannot say that Lieutenant Malek's decision evidences the sort of deliberate indifference necessary to trigger liability under the Eighth Amendment. Lieutenant Malek transferred Mr. Boyce to a different tier with a different inmate population, apparently believing that Tier H-1 would be more secure. *See Lewis v. Richards*, 107 F.3d 549, 553-54 (7th Cir. 1997) (holding that transfer to a different area of prison instead of to protective custody relevant in refuting argument that officials refused to take any action and were deliberately indifferent). Mr. Boyce, who did not know the identity of his attackers, their motive or their possible gang affiliation, offers no evidence that Lieutenant Malek's action was unreasonable. Simply put, Mr. Boyce has failed to carry his burden of introducing evi-

dence that Lieutenant Malek's actions were deliberately indifferent.[3]

Mr. Boyce also contends that Lieutenant Malek violated his Eighth Amendment rights by failing to provide adequate medical treatment. He alleges that, after he returned from Cermak on June 8, 1994, his "repeated requests to be returned to Cermak for follow-up medical attention were completely ignored." Appellant's Br. at 21. It may be true that Mr. Boyce's requests to return to Cermak were denied, but, according to his deposition, he made the requests to an Officer Washington and to a paramedic. This evidence cannot establish Lieutenant Malek's alleged indifference to Mr. Boyce's medical condition. Consequently, summary judgment was appropriate on the issue of Lieutenant Malek's deliberate indifference to Mr. Boyce's medical condition.

### C. Executive Director

Mr. Boyce's claim against the Executive Director is asserted against him in his official capacity; it therefore is essentially a claim against the municipality, alleging that the municipality's policy caused the constitutional deprivation. *See Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991). Such a claim requires a plaintiff to "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 407 (1997); *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997) (requiring deliberate indifference for a finding of municipal liability under § 1983). Mr. Boyce

---

[3] Lieutenant Moore testified in his deposition that protective custody was not available at that time. *See* R.95, Ex.F at 41.

contends that the failure to provide for any protective custody in Division 1 and the requirement that all inmates attend yard exercise constitute policies that operated to deprive him of his Eighth Amendment right to freedom from cruel and unusual punishment.

With respect to the first policy, failure to provide protective custody, Mr. Boyce provides the court with no authority and relies on the naked allegation that "[a] reasonable jury could conclude that this lack of a [protective custody] policy directly caused Boyce's injuries." Appellant's Br. at 18. The failure to provide protective custody "is not dispositive of the fact that prison officials were therefore deliberately indifferent to [an inmate's] safety." *Lewis*, 107 F.3d at 553. However, a plaintiff may prove "deliberate indifference" by showing a pattern of violations. *Brown*, 520 U.S. at 407-08; *see Robles*, 113 F.3d at 735 (indicating that failure to act after learning of pattern of violations would be deliberately indifferent). Nevertheless, Mr. Boyce has not introduced any evidence of a pattern of constitutional violations that would allow the court to infer or impute knowledge such that the absence of protective custody constitutes deliberate indifference. Nor has Mr. Boyce presented the court with any evidence that the Executive Director had actual knowledge that Mr. Boyce was in danger after his transfer to Tier H-1. *See id.* at 735 (noting that plaintiff must establish direct causal link between city and unconstitutional conduct).

On Mr. Boyce's second argument of unconstitutional policy, mandatory yard exercise, the district court correctly found that there was no contested issue of material fact. Both Lieutenants Malek and Moore testified in their depositions that an inmate would be excused from the yard if he feared an attack by others. According to Mr. Boyce's deposition, Mr. Boyce merely stated to Officer Washington, "I don't want to go to the yard." R.95, Ex.D at 89. Officer

Washington responded, "[Y]ou've got to go. Let's go. It's mandatory." *Id.* at 90. Mr. Boyce did not raise a concern for his safety; pursuant to CCDOC policy, his subjective desire not to go to the yard, without further explanation, was not sufficient to excuse his attendance. Therefore, there was no evidence of deliberate indifference; the district court properly granted summary judgment on Mr. Boyce's failure to protect claim against the Executive Director.[4]

## Conclusion

The district court correctly granted summary judgment for the defendants because Mr. Boyce failed to establish a genuine issue of material fact as to the elements of an Eighth Amendment violation. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*

[4] Mr. Boyce has waived his claim that the Executive Director's actions were deliberately indifferent to Mr. Boyce's medical condition by failing to argue the issue on appeal. *See FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1025-26 (7th Cir. 1988) (stating that Federal Rules of Appellate Procedure require that appellant present in his brief the issues he wishes to litigate or they are waived).