Harris ROACH, Plaintiff–Appellant,

v.

CITY OF EVANSVILLE, Evansville Police Department By Art Gann, in his official capacity, et al., Defendants–Appellees.

No. 96–2207.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1996.

Decided April 16, 1997.

Patrick Stern, Indianapolis, IN (argued), for Plaintiff–Appellant.

David L. Jones (argued), Jones & Wallace, Evansville, IN, for City of Evansville, Evansville Police Department, Art Gann.

Lawrence L. Grimes, J. Edward Wicht, Bowers, Harrison, Kent & Miller, Evansville, IN, for Richard R. Whitlow.

Before CUMMINGS, EASTERBROOK and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Harris Roach sued the City of Evansville, Indiana, the Evansville Police Department, and former Evansville police officer Richard Whitlow for alleged violations of his civil rights. His complaint arises from Whitlow's attempt to extort $100,000 from him in exchange for "losing evidence" in a drug case pending against Roach's [1] son, Toshio. Since the time of these events, both Whitlow and Toshio Roach have been convicted of their respective crimes and are now in prison. Although this case arises from unusual facts, there is nothing extraordinary about the law to be applied. For the reasons stated below, we affirm the district court's grant of summary judgment in favor of the defendants.

## BACKGROUND

In the Spring of 1993, Whitlow, a nine year veteran in the Evansville Police Department, participated in obtaining and executing a search warrant against Toshio Roach, who was suspected of engaging in drug trafficking. At the time, Toshio was living in the home of his father, Harris Roach. Whitlow and other officers executed the search warrant and confiscated a number of incriminating items that eventually were used to convict Toshio on drug trafficking charges. Whitlow also confiscated identification cards belonging to Toshio Roach, but did not log these cards as evidence or turn them over to the officer in charge of property seized in the search. Instead, he kept the cards and included them with notes he sent to Harris Roach, asking for $100,000 in exchange for "losing evidence" in the case against Toshio. Whitlow included the cards to show Roach that he had access to the evidence seized in the search and could make good on his claim.

Unimpressed, Roach contacted the FBI, and Whitlow was subsequently arrested when he went to pick up what he thought was his $100,000 payoff. Although Whitlow concocted a story about the extortion really being a plan to confiscate further drug proceeds from Toshio, a jury did not believe him, and he was convicted of extortion and theft. Roach then brought a three-count complaint against Whitlow, the City of Evansville and the Evansville Police Department. He charged Whitlow with violating his civil rights, and charged all the defendants with conspiracy to violate his civil rights. He directed the third count to the City of Evansville and the Evansville Police Department (collectively, the "City") only, charging failure to adequately train Whitlow as a police officer. The complaint purported to be "authorized" by the Privileges and Immunities Clause of the Constitution, the Fourth, Ninth and Fourteenth Amendments to the Constitution, as well as 42 U.S.C. §§ 1983, 1985 and 1988.

After discovery, the City and Whitlow moved separately for summary judgment. The City argued that it was entitled to judgment as a matter of law on all Section 1983 claims because Roach could not show that he had been deprived of a constitutional right. Similarly, the City contended that it did not know of Whitlow's plan to extort money from Roach, obviating a claim of conspiracy. Further, the City argued, Roach had not alleged that he was part of a protected class, as required for a Section 1985 claim. For the failure to train claim, the City supplied an affidavit detailing the training that Whitlow received as a police officer. Whitlow adopted the City's brief for his argument on the conspiracy count brought against all defendants, and to the extent it addressed the claim against him personally. For the count brought solely against Whitlow, that he violated Section 1983 by trying to extort money from Roach, Whitlow argued that he could not be held liable under Section 1983 unless he knew or should have known he was violating the plaintiff's clearly established rights. Whitlow also contended that Roach failed to plead that he was deprived of a recognized constitutional right.

The district court granted summary judgment for defendants on all counts, noting first that it was difficult to determine the exact grounds on which plaintiff was pressing his claim. The court noted that for the Section 1985 conspiracy claim, plaintiff had failed to present evidence that the defen-

---

1. When we refer to "Roach," we are referring to plaintiff Harris Roach.

dants acted in concert, but that the City had presented evidence that Whitlow acted alone. The court also noted that plaintiff failed to allege that he was a member of a protected class. As for the failure to train claim, the district court held that plaintiff could not make out a claim of inadequate training based on the single incident alleged. Finally, on the count brought solely against Whitlow, the court noted that it could not discern what constitutional deprivation occurred with the attempted extortion. The court found the extortion involved no search, no seizure and no privacy rights. Although a completed extortion may have implicated some due process right, the district court stated, Roach had made no such claim and therefore summary judgment was appropriate.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Green v. Shalala*, 51 F.3d 96, 99 (7th Cir.1995). Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As the district court noted, it is difficult to determine the bases on which plaintiff is pressing his claim because of the way in which the complaint is drafted. Unfortunately, plaintiff's brief on appeal does little to clarify the claims, but we will grant plaintiff the benefit of the doubt, as did the district court, and construe his complaint as broadly as possible. We will first address the City's motion for summary judgment.

The first claim states that Art Gann, who was the police chief of the City of Evansville, and others conspired with Whitlow to violate Roach's civil rights. The complaint alleges in a conclusory manner that the conspiracy deprived plaintiff of his constitutional rights, privileges and immunities, and violated his Fourth and Fourteenth Amendment rights, all in contravention of Section 1985.[2] The overt acts in furtherance of the conspiracy were alleged to be extortion and tampering with evidence. In order to state a claim for a

Section 1985 conspiracy, a plaintiff must allege

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Bowman v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir.1992), *cert. denied*, 508 U.S. 940, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993) (citing *United Brotherhood of Carpenters and Joiners, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–57, 77 L.Ed.2d 1049 (1983)). In addition, the second element has been interpreted to require that a claim brought pursuant to Section 1985(3) must be predicated on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

We note initially, as did the district court, that Roach makes no claim that he was a member of a protected class or that the City had a class-based discriminatory animus, and thus he fails to state a claim under Section 1985(3). Furthermore, the City has provided evidence that Whitlow acted alone in his scheme to extort money from Roach, and Roach has insufficient evidence to contradict this claim. Roach points to the testimony of Whitlow and fellow officer John Zirkelbach that Whitlow told Zirkelbach of his plan to pressure Roach into turning over drug proceeds. Roach further contends that other members of the Evansville police department had engaged in illegal activities to deprive certain persons of their civil rights. Roach ignores that both Whitlow and Zirkelbach testified that Zirkelbach advised Whitlow to talk to his supervisors before proceeding with any such plan, and that Whitlow never consulted his supervisors. Roach also

---

2. The complaint erroneously states that the conspiracy violates Section 1983, but plaintiff argued below that this was a Section 1985 claim, and the defendants and the district court treated it as such. We will also treat it as a Section 1985 claim.

omits that Whitlow testified that he acted alone when he sent the extortion note to Roach, and that the City did not know of his plan until Roach contacted the FBI, which then contacted the City. At that point, the City arrested and prosecuted Whitlow, an act hardly consistent with a conspiracy to deprive Roach of his civil rights. Roach's rambling affidavits in support of his claim that the City was generally engaged in a conspiracy to deprive other persons of their civil rights are completely unrelated to any of Roach's claims and do not create a genuine issue regarding the City's conduct toward him. Any Section 1985 claim, therefore, fails, and summary judgment was properly granted to all defendants on this claim.

■■■■ Section 1983 provides in relevant part:

> Every person who, under color of any statute ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Of course, municipal liability for a Section 1983 violation is governed by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny. Before the City can be liable under Section 1983, the plaintiff must show either "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995) (internal citations and quotation marks omitted). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). The parties appear to agree that there was no express policy here; nor was there a constitutional deprivation by a person with final decision-making authority. Rather, the parties focus on the "widespread practice" prong of *Monell*'s municipal liability test.

The City has shown that Whitlow acted alone, and that the City arrested and prosecuted him as soon as it was informed of Whitlow's activities by the FBI. Roach again points to the Zirkelbach testimony and to the affidavits of himself and others charging the police department with other misconduct. The Zirkelbach testimony fails to support this claim for the same reasons it failed to support the conspiracy claim. Roach gives only half the story, omitting Zirkelbach's testimony that he told Whitlow to contact his supervisors, but Whitlow did not do so. Nor are the affidavits helpful to any Section 1983 claim. The first affidavit, from Anthony James Cates, avers that Cates was arrested and charged with attempted murder, kidnapping, burglary and rape, among other things. Cates claims that the arresting officers encouraged the victim to identify Cates as the perpetrator, and that he was later acquitted. Cates also charges that the Evansville police picked up prostitutes and took them to the station to engage in unspecified unlawful conduct. None of Cates' claims relate to Whitlow's attempted extortion of Roach, and Roach does not explain how any of this conduct relates to a widespread practice of depriving residents of their civil rights.

The second affidavit, from plaintiff Roach himself, details the circumstances of his son's arrest, Roach's efforts to secure an attorney for his son, and the subsequent contacts from Whitlow. This affidavit supports a claim that Whitlow acted illegally, but adds nothing to a claim regarding any widespread practice in the police department. The third affidavit, of Jerry Hazelwood, asserts that he witnessed several officers, including Whitlow and Zirkelbach, enter and search the home of

Tony Hazelwood, and that he later learned that the officers seized evidence from that search. Jerry Hazelwood's affidavit, in and of itself, describes the perfectly appropriate police behavior of executing a proper search warrant and seizing incriminating evidence. The final affidavit, of Tony Hazelwood, describes the same search and seizure, but adds that the officers who arrested Tony Hazelwood offered him a deal in exchange for false testimony against Harris and Toshio Roach.

Summing up the affidavits, we now have evidence that Whitlow acted illegally, albeit without the knowledge or complicity of the City, and that other officers attempted to obtain false testimony about Harris and Toshio Roach in exchange for "a deal" with a man who was arrested on unspecified charges. Like the district court, we find that no reasonable jury could infer from these isolated incidents, both occurring in the same case within a very short span of time, that the City was engaged in a permanent and well-settled practice of depriving residents of their constitutional rights. Moreover, Roach has not shown any actual deprivation of rights by the City, and cannot sustain a Section 1983 claim on that basis alone. *Reichenberger v. Pritchard*, 660 F.2d 280, 285 (7th Cir.1981).

The last claim brought against the City is that the City's failure to train Whitlow resulted in Roach being deprived of his constitutional rights. "An allegation of a 'failure to train' is available only in limited circumstances." *Cornfield by Lewis v. Consolidated High School Dist.* 230, 991 F.2d 1316, 1327 (7th Cir.1993). To prevail, Roach must show that the City's employee violated his constitutional rights, that the City had a policy or custom of failing to train its employees, and that the failure to train caused the constitutional violation. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 123, 112 S.Ct. 1061, 1067–68, 117 L.Ed.2d 261 (1992). "In particular, ... the inadequate training of police officers could be characterized as the cause of a constitutional tort if—and only if-the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into con-

tact." *Id.*, 503 U.S. at 123–24, 112 S.Ct. at 1068. In defining the standard for deliberate indifference, we have looked to the *Supreme Court's reasoning in City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). There, the Court stated that an inadequate training program can be justifiably said to represent "city policy" when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S. at 390, 109 S.Ct. at 1205. Furthermore, "to ensure that isolated instances of misconduct are not attributable to a generally adequate policy or training program, we require a high degree of culpability on the part of the policymaker." *Cornfield*, 991 F.2d at 1327. Coupled with a causation requirement, liability must be based on "a finding that the policymakers have actual or constructive notice that a particular omission ... is likely to result in constitutional violations." *Id.*

In support of its motion for summary judgment on this claim, the City produced evidence of the police training which it provided to Whitlow, including an impressive list of all the classes and seminars Whitlow attended while employed by the Evansville Police Department. The City also argues that as a matter of law it should not be required to specifically train its officers to refrain from using their positions on the police force to extort money from residents. In response, Roach again relies on the illegal acts of Whitlow and the affidavits we have already described to show that the City did not adequately train its officers.

We need not decide whether, as a matter of law, the City should be required to train officers specifically not to violate the law against extortion because Roach has not articulated what constitutional deprivation he suffered. Nor has he alleged any facts to take this case outside the realm of an isolated incident occurring in spite of generally adequate training programs. Whitlow graduated from the Indiana Law Enforcement Academy and met or exceeded all training

requirements for a police officer during the time he was employed by the City. His education at the police academy included a criminal law course, and he ranked seventh out of ninety-six students in his class. He attended a number of seminars specifically relating to narcotics, which was his area of assignment, as well as courses in interviewing and interrogating suspects, use of firearms, use of force, handcuffing, and cultural awareness. This Court counted in excess of one hundred individual training sessions Whitlow completed while he was a member of the Evansville Police Department. Roach cites no facts to support a conclusion that City policymakers had actual or constructive notice that a particular omission (in this case, failing to train Whitlow to refrain from extortion) was likely to result in constitutional violations. No rational jury could conclude that the City, which provided extensive training to its officers, was deliberately indifferent to the civil rights of the residents of Evansville because the City failed to tell its police officers to refrain from attempting extortion. In these circumstances, summary judgment is appropriate on this claim.

▮ The only claim remaining is the Section 1983 claim against Whitlow alone. Roach characterizes Whitlow's attempted extortion as a violation of his Fourth Amendment right to privacy—his "right to be left alone." We will construe this claim as broadly as possible, as the district court did, interpreting the claim as one for violation of Fourteenth Amendment privacy rights and violation of the Fourth Amendment right to be free from unreasonable searches and seizures. The only search and seizure at issue here is the search of Roach's residence pursuant to a warrant directed against the activities of his son Toshio, and the subsequent seizure of evidence used in the criminal case against Toshio. Of course, Whitlow also seized Toshio's identification cards, which he used in the attempted extortion. Nothing belonging to Harris Roach was seized as a result of the search, and the thwarted extortion certainly did not result in any seizure. Roach's claim appears to be based on the fact that the warrant was issued on the basis of an anonymous tip. However, that a search was based on an anonymous tip does not *per*

*se* render the search improper, *United States v. Lloyd,* 71 F.3d 1256, 1262–63, (7th Cir. 1995), *cert. denied,* — U.S. ——, 116 S.Ct. 2511, 135 L.Ed.2d 200 (1996); *United States v. Pless,* 982 F.2d 1118, 1124–25 (7th Cir. 1992), and Roach has no other complaint about the search. With no seizure and no improper search, no Fourth Amendment basis exists for a Section 1983 claim against Whitlow.

▮ Nor do we see how a privacy claim can be made out on these facts. Roach invokes the right to privacy by casting it as a general right to be left alone from any unwanted intrusion of the government. The intrusion that occurred here, construing the facts in a light most favorable to Roach, is that he received phone calls and notes from Whitlow, a police officer, asking for money in exchange for losing evidence in the drug case against Toshio Roach. We do not believe that Whitlow's conduct rises to the level of an infringement of Roach's privacy rights. Courts have articulated two main areas of constitutional privacy rights. First, an individual's right of privacy embodied in the Fourteenth Amendment protects an individual's interest in avoiding disclosure of personal matters and the right to make important decisions in the areas of marriage, procreation, contraception, family relationships and child rearing and education without the interference of government. *Whalen v. Roe,* 429 U.S. 589, 600–01 and n. 26, 97 S.Ct. 869, 876–77 and n. 26, 51 L.Ed.2d 64 (1977); *Jaffee v. Redmond,* 51 F.3d 1346, 1356 (7th Cir.1995) *aff'd,* — U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (upholding psychotherapist/patient privilege based on right of privacy to avoid disclosure of highly personal matters). Second, courts have defined a certain zone of privacy or expectation of privacy in the Fourth Amendment search and seizure context that we have already discussed. None of these traditional Fourteenth Amendment privacy rights are at issue here.

Roach has not cited any of these cases or already-existing theories about privacy rights, and has not articulated how the intrusion he experienced implicates privacy rights. We agree with the district court that had the

extortion been completed, Roach might have a due process claim that he could bring against Whitlow pursuant to Section 1983. But absent that, Roach has not articulated a claim that he has been deprived of a constitutional right, and therefore, the district court's grant of summary judgment in favor of the defendants is

AFFIRMED.