142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Orville ONEY, Plaintiff-Appellant,
v.
Leroy NENNIG, Jr., Wolfgang Schrauth, Richard Davis, et al.
Defendants-Appellees.
 No. 97-2075.
 United States Court of Appeals,
Seventh Circuit.
 .
Submitted March 3, 1998.*
Decided March 11, 1998.
Rehearing Denied April 27, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 94-C-814, Charles N. Clevert, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JOHN L. COFFEY, and Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Orville Oney brought suit against the defendants claiming civil rights violations under 42 U.S.C. §§ 1983 and 1985(3), and asserting various state law claims based on an alleged illegal search of his house. All of the claims except those under § 1983 were dismissed for failure to state a claim. After a hearing, the district court granted summary judgment to the defendants. Oney appeals.
 
 
 2
 Arnold Ramaker was on probation for indecent exposure and defendant Schrauth, a probation and parole officer for the Wisconsin Department of Corrections, was his probation officer. Donald Vogt was Schrauth's supervisor. In July 1991, Schrauth learned that Ramaker may have been illicitly involved with young girls and received permission from his supervisor to search Ramaker's house Two police officers, Leroy Nennig, Jr. and Konrad Kaczkowski, were asked to assist in the search. Accordingly, Nennig, Kaczowski, Schrauth, and Vogt went to Ramaker's house accompanied by Ramaker himself, who was present during the entire search. Ramaker's mother lived next door and she and Oney, who was visiting her, went over to her son's house when they saw the police arrive. During the search, the authorities noticed a significant amount of computer equipment and accessories, as well as cameras, pictures of children, magazines with pictures of nude children, and boxes of children's clothes. Schrauth found a sheet of paper with a list of file names for "adult entertainment" computer disks and Ramaker indicated that the disks were Oney's. At Schrauth's request, Oney went next door and retrieved some disks which he showed to Schrauth. Schrauth did not touch the disks but asked Oney to put them on the table. Officer Nennig took the disks. The officers also confiscated child pornography movies and still pictures from Ramaker. The officers then left Ramaker's house.
 
 
 3
 Schrauth later learned that Oney had been convicted of indecent behavior with a child and told Officer Nennig. Due to Oney's apparent friendship with Ramaker and the fact that they shared computer information which may have been related to child pornography, Officer Nennig sought to obtain a search warrant for Oney's home with the help of the Sheboygan County District Attorney. Nennig signed an affidavit in support of the warrant, and the warrant was issued. Nennig, Detective Kirk Bloedorn, and Detective Robert Shield conducted the search. During the search of Oney's home, certain items were taken by the authorities. No charges were filed against Oney and, after six months, most of the items ultimately were returned to Oney.
 
 
 4
 Oney raises numerous claims on appeal, accordingly, we will first address Judge Evans' decision to dismiss certain claims for failing to state a claim under Rule 12(b)(6) as well as various rulings by Judge Evans[2] and Judge Clevert. Oney asserts that Judge Evans erred in taking judicial notice of certain documents offered by the defendants. Because they are all matters of public record and Oney did not challenge the documents' authenticity or accuracy, the district court properly took judicial notice of them. See Fed.R.Evid. 201; see also General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir.1997) ("A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known with the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' ") (internal citation omitted). Oney also contends that Judge Evans erred in dismissing his claims pursuant to 42 U.S.C. § 1985(3). We review the grant of a motion to dismiss de novo. As stated by the district court, a plaintiff seeking relief under § 1985(3) must allege a conspiracy for the purpose of depriving a person of equal protection of the laws, and the claim must be predicated on some "racial, or perhaps otherwise class-based, invidiously discriminatory animus" Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); see also Roach v. City of Evansville, 111 F.3d 544, 547 (7th Cir.1997). On appeal, Oney states that he withdraws his argument made before the district court that convicted felons constitute a class, and appears to argue instead that no racial or other discriminatory animus need be asserted to support the § 1985(3) claim. This argument lacks merit, and, in any event, was waived because it was not raised before the district court. See Oates v. Discovery Zone, 116 F.3d 1161, 1168 (7th Cir.1997).
 
 
 5
 Oney also argues that Judge Evans erred in dismissing his claims under § 1983 based on theories of respondeat superior and negligence. We conclude that no error occurred. See Monell v. New York City Dep't of Social Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (no respondeat superior liability under § 1983); Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (no liability for negligence under § 1983). In addition, Oney's argument that County Court Commissioner Terence Bourke, the commissioner who authorized the search warrant of Oney's house, violated his civil rights must fail as Bourke is not a named defendant in this action, and the district court denied Oney's motion to amend the complaint to name him.
 
 
 6
 We now turn to Judge Clevert's decision to grant summary judgment to the defendants. This court reviews de novo a district court's decision to grant summary judgment. See Larsen v. City of Beloit, 130 F.3d 1278, 1281 (7th Cir.1997). We first address the § 1983 claims against the probation officer Schrauth and his supervisor, Vogt.[3] In order to assert a claim under § 1983, the conduct complained of must have been under the color of state law and must have deprived the person of rights, privileges, or immunities under the Constitution. See id. at 1282. Oney asserts that Schrauth illegally "seized" the computer diskettes which Oney retrieved from his house and that Schrauth conspired to deprive Oney of his constitutional rights by participating in the conversation which led to the search of Oney's house. Oney's claim against both Schrauth and Vogt fails. When Ramaker stated that the list of diskettes was Oney's, Schrauth asked Oney if he had the diskettes. Oney voluntarily went next door to Helen Ramaker's house, retrieved the disks, and then showed them to Schrauth. Neither Schrauth nor Vogt ever touched the diskettes. Neither Oney nor the diskettes were seized.
 
 
 7
 Further, during the hearing on the motion for summary judgment, Oney admitted that neither Schrauth nor Vogt had any direct role in obtaining the search warrant for his residence. Oney also admitted at the hearing that there was nothing before Judge Clevert that would support his claim against Vogt. Oney has offered no evidence that either Schrauth or Vogt were personally responsible for the alleged illegal search of his house or that they conspired to cause the alleged illegal search. See Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983) (stating that causal connection must exist between official's conduct and the alleged constitutional deprivation). Because Oney did not create a genuine issue of material fact as to the alleged constitutional violations by Schrauth or Vogt, the decision of the district court to grant summary judgment in their favor was proper.
 
 
 8
 Oney also argues that the Sheboygan County Sheriff's Office had a policy which permitted searches based on false statements in affidavits supporting search warrants. In order to hold a local government responsible under § 1983, the local government's policy must violate the person's civil rights. Such a violation can be shown in one of three ways: "(1) an express policy that, when enforced, causes a constitutional violation, (2) a widespread practice, that although not authorized by written law or express municipal policy, is so permanent and well settled as constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.' " McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir.1995) (internal citations omitted).
 
 
 9
 Oney does not allege an express policy nor does he allege an injury caused by a person with "final policymaking authority." In support of his claim that the county had a "widespread practice" of permitting illegal searches, Oney offers his own affidavit and the affidavit of one other individual who allegedly was the victim of an unconstitutional search. This is insufficient to demonstrate a widespread practice. See Roach, 111 F.3d at 548 (affidavit from another unrelated defendant detailing alleged civil rights' deprivations by the city's police officers did not demonstrate a widespread practice of depriving citizens of their civil rights). Oney has failed to demonstrate that "through its deliberate conduct, [the county] was the 'moving force' behind the injury alleged." Board of the County Comm'rs of Bryan County, Okla v. Brown, 520 U.S. 397, ----, 117 S.Ct. 1382, 1387, 137 L.Ed.2d 626 (1997). Accordingly, his claims against the sheriff's office fails. To the extent that Oney's claim against Sheriff Davis is one against Davis in his official capacity, it fails for the same reason that the claim against the county fails because a suit against Davis in his official capacity is a suit against the Sheboygan County Sheriff's Department. See Gossmeyer v.. McDonald, 128 F.3d 481, 494 (7th Cir.1997). If Oney's claim is against Sheriff Davis in his individual capacity, it also fails as Oney has not offered any evidence which would create a genuine issue of material fact that Davis personally was involved in or knew of the allegedly false affidavit. See id. at 495.
 
 
 10
 Finally, Oney argues that Officer Nennig, who obtained the search warrant for Oney's house, Officer Kaczkowski, who helped with the search of Ramaker's house, and Officers Bloedorn and Shield, who participated in the search of Oney's house, all violated his rights under the Fourth and Fourteenth Amendments. Judge Clevert concluded that each of the officers was entitled to qualified immunity. In analyzing the defense of qualified immunity, this court first looks to whether the alleged conduct set out a constitutional violation and whether the constitutional standards were clearly established at the time in question. See Polenz v. Parrot, 883 F.2d 551 (7th Cir.1989). "[W]e must ask as a practical matter whether a reasonable official would have understood that what [ ]he was doing was unlawful." Gustafson v. Jones, 117 F.3d 1015, 1021 (7th Cir.1997); see also Tangwall v. Stuckey, No. 96-2960, 1998 WL 35156, at * 7 (7th Cir. Feb.2, 1998).
 
 
 11
 Oney alleges that Kaczowski participated in a conspiracy to obtain an invalid search warrant of Oney's house based on false evidence. However, Oney's allegations of Kaczowski's involvement in a conspiracy are conclusory and without support. See Kunik v. Racine County, 946 F.2d 1574, 1580 (7th Cir.1991) (allegations of a conspiracy "must be further supported by some factual allegations suggesting a 'meeting of the minds' "); see also Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 436 (7th Cir.1986) ("A party may not cry 'conspiracy' and throw himself on the jury's mercy.") Oney has offered no evidence to support his claim that Kaczowski entered into an agreement with the other officers to deprive Oney of his rights under the Fourth and Fourteenth Amendments. Accordingly, the claim against Kaczowski must fail.
 
 
 12
 Oney also seeks to hold Detectives Bloedorn and Shield responsible for the alleged civil rights violations because they aided in searching Oney's house after the warrant was issued. Bloedorn and Shield were not involved in obtaining the warrant and Oney admitted during the summary judgment hearing that they each acted pursuant to a facially valid warrant. Because these officers acted pursuant to a facially valid search warrant, we cannot conclude that they would have understood their actions to be unreasonable.[4] See Anderson v. Creighton, 483 U.S. 635, 636-37, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (a "law enforcement officer who participates in a search that violates the Fourth Amendment may [not] be held personally liable for money damages if a reasonable officer could have believed that the search comported with the Fourth Amendment,"). Accordingly, Detectives Bloedorn and Shield are protected by the doctrine of qualified immunity.
 
 
 13
 Oney asserts that Nennig recklessly included false information in his affidavit used to establish probable cause for the search warrant for Oney's house. Affidavits supporting search warrants are presumed valid. Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). "Police officers may not intentionally or recklessly misrepresent material information to magistrate judges, and misrepresentations encompass omissions." Supreme Video, Inc. v. Schauz, 15 F.3d 1435, 1441 (7th Cir.1994). In order to demonstrate that the search warrant was void due to the use of alleged intentionally or recklessly false information, the "defendant [must] make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included ... in the warrant affidavit." Franks, 438 U.S. at 155-56.
 
 
 14
 Although Oney details several alleged discrepancies in Nennig's statement of facts in the affidavit in support of the search warrant, he offers no evidence in support of the fact that Nennig was aware that the statements were untrue.[5] In his affidavit in support of his motion for summary judgment, Nennig stated that it was his understanding at the time that he sought the search warrant of Oney's house that Ramaker and Oney knew each other, that Oney spent a significant amount of time at Ramaker's residence, and that they may have exchanged pornographic media. Further, he stated that he was under the impression based on Ramaker's statements that Ramaker and Oney's computers could "talk to each other." Based on the fact that Ramaker's computer appeared to have been used to keep records of child pornography, and because pornographic material involving children had been found in Ramaker's house, Nennig believed that Oney may also have been involved in illicit activity, including possession of child pornography, sexual exploitation of a child, and child enticement.[6] Consequently, because Oney has failed to establish a genuine issue of material fact as to whether Nennig intentionally or recklessly misrepresented the truth, summary judgment was proper. Moreover, even if the affidavit had not been sufficient to establish the probable cause necessary for the warrant, Nennig still would be entitled to qualified immunity. See Forman, 104 F.3d at 964 (" 'Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.' ") (quoting Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).
 
 
 15
 Oney also asserts that the Sheriff's Department did not return several items that were taken during the search of his home, including $150, pictures of his daughter, and a hardcover joke book. See Appellant's Reply Br. at 29. The district court dismissed this claim without prejudice concluding that the claim was pendent and that the court did not have jurisdiction to consider the claim absent a valid § 1983 claim. Oney's § 1983 claim failed because he has post-deprivation state remedies. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).
 
 
 16
 Finally, Oney's last two arguments in his brief on appeal, that the district court erred in not permitting him to amend his complaint and that the district court erred in not permitting him to reopen discovery, also fail. Oney had been permitted to amend his complaint once in order to add defendants and restate certain claims "to conform more closely to the evidence and circumstances of the deprivation of [his] civil rights." See R. 22. In his motion to amend his complaint a second time, Oney sought to add Court Commissioner Bourke, who issued the search warrant, and the County of Sheboygan. Judge Clevert denied the request stating that the court commissioner was entitled to immunity and the claims against the County of Sheboygan were essentially the same as the claims against the Sheboygan County Sheriff's Department. The decision whether to permit Oney to amend his complaint again was within the district court's discretion, and the district court did not abuse it's discretion. Although Federal Rule of Civil Procedure 15(a) encourages allowing amendments when "justice so requires," we agree with the district court that justice did not require allowing these second amendments sought by Oney.
 
 
 17
 We review the trial judge's decisions regarding discovery issues with deference. See AM Int'l, Inc. v. Datacard Corp., 106 F.3d 1342, 1352 (7th Cir.1997). Here, Oney stated that he desired to reopen discovery because of a discrepancy in the search warrant affidavit as to who transported Ramaker to his house when it was searched, and in order to determine whether prior civil rights complaints had been lodged against officers of the Sheboygan County Sheriff's Department. The district court concluded that these reasons were insufficient to reopen discovery after the summary judgment motions had been filed and we see no reason to disturb this ruling on appeal.
 
 
 18
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a), Cir.R. 34(f)
 
 
 [2]
 The case initially was assigned to Judge Evans. However, after he ruled on the defendants' motion to dismiss, the case was transferred to a magistrate judge and then to Judge Clevert for a ruling on the motions for summary judgment
 
 
 [3]
 To the extent that any claim against Vogt or Schrauth was in their official capacity as probation officers for the state of Wisconsin, such a suit is barred by the Eleventh Amendment. See Weinberger v. Wisconsin, 105 F.3d 1182, 1186 n. 2 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 336, 139 L.Ed.2d 261 (1997)
 
 
 [4]
 Because we conclude that officers Shield and Bloedorn acted reasonably in carrying out the facially valid warrant, we need not address whether the search was, in fact, illegal. See Forman v. Richmond Police Dep't, 104 F.3d 950, 959 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 563, 139 L.Ed.2d 403 (1997) ("In regard to [the plaintiff's] unreasonable search and seizure claim, it makes sense to initially analyze the second prong of the qualified immunity test ... in order to avoid addressing the more difficult question of whether the warrantless search was in fact unconstitutional.")
 
 
 [5]
 For example, Oney has submitted affidavits in support of his argument that the computers, in fact, were incompatible and could not have communicated with each other. In his affidavit in support of summary judgment, Nennig stated that any misunderstanding he had about the operation of the computers was based on his own ignorance of the operation of computers and any misstatements were not made to mislead the magistrate
 
 
 [6]
 After leaving Ramaker's residence, Nennig learned from Officer Schrauth that Oney had been convicted of indecent behavior with a child in 1975