Lamar CHAPMAN, III, Plaintiff–Appellant,

v.

Mark W. STRICKER, et al., Defendants–Appellees.

No. 02–3754.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 4, 2003.*

Decided Nov. 12, 2003.

Lamar Chapman, III, pro se, Matteson, IL, for Plaintiff–Appellant.

Thomas G. DiCianni, Ancel, Glink, Diamond, Bush, Dicianni & Rolek, Chicago, IL, for Defendants–Appellees.

Before BAUER, COFFEY, and KANNE, Circuit Judges.

## ORDER

Lamar Chapman III filed suit under 42 U.S.C. § 1983 alleging that several employees of the village of Matteson, Illinois, violated his constitutional rights by thwarting him from distributing a political flyer. Chapman initially received a default against two defendants who had not been properly served, but the district court later set it aside and eventually dismissed the

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

complaint in its entirety for failure to state a claim. We vacate the dismissal and remand.

We assume for purposes of our review that the following facts as alleged in Chapman's complaint are true. In April 2001 Mark Stricker was running for reelection to the Matteson Board of Trustees. Chapman was opposed to Stricker's reelection, so he went to two church parking lots, an elementary school, and private homes to distribute a flyer that criticized Stricker and promoted Chapman's favored candidates instead. Chapman was circulating both in Matteson and in the nearby village of Flossmoor, but it is not clear from his complaint whether he was leaving the flyers only on front doors and unattended cars or whether he was also distributing them to willing recipients. Chapman's efforts, though, were mostly for naught. William Vis, who served as Stricker's campaign aid and also as the Matteson police commissioner, removed the flyers that Chapman had put on cars in a church parking lot in Flosmoor and directed an off-duty Matteson police officer to stop Chapman from circulating in a Matteson church parking lot. Stricker himself removed Chapman's flyers from cars at a Matteson elementary school and then enlisted the help of a non-party, Henry Swan, to replace all of the flyers Chapman had left at homes in Matteson with ones promoting Stricker and Vis. Swan was rewarded for his cooperation with "non-bid Village insurance business." Stricker and Vis ultimately called the Matteson police to report Chapman's leafleting. Officer R. Wilson and other unnamed officers found Chapman on the street, "verbally restrained" him, and ordered him to produce identification. Wilson told Chapman to stop circulating the "slanderous" flyers because he needed to register with the village before circulating. Chapman, who is African American, claims that Stricker,

Vis, and Wilson, all of the them "European American," acted under color of law to deprive him of his rights to free speech, equal protection, due process, and privacy. He contends that they discriminated against him based on his race and political beliefs.

■ As an initial matter Chapman contends here that the district court erred in vacating the default against Vis and Wilson, a decision we review for an abuse of discretion. *See Robinson Eng'g Co., Ltd. Pension Plan & Trust v. George*, 223 F.3d 445, 448 (7th Cir.2000). In order to have an entry of default vacated, the moving party must show (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir.1994). Although the district court did not articulate its evaluation of these factors in its written decision, we cannot find that the court abused its discretion. Vis and Wilson took quick action to cure the default, filing a motion to enter their appearances two business days after it was entered. They showed good cause for the default–they had not been properly served with process–and also told the court that they planned to pursue a meritorious defense by joining in Stricker's motion to dismiss. *See Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir.1994) (meritorious defense need not be one that will definitely succeed); *see also Augusta Fiberglass Coatings, Inc. v. Floor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir.1988). We therefore cannot say that the district court abused its discretion by vacating the default against Vis and Wilson.

■ As to the merits, the district court concluded that Chapman, a plaintiff with a "proclivity for filing frivolous and vexatious lawsuits," had brought yet another frivo-

lous suit, this time failing "to plead facts" to support his claims. Indeed, the district court thought Chapman's suit so meritless that the court did not even mention all of his claims. The Supreme Court has made clear, and we have held repeatedly, that the federal system requires only notice pleading; a plaintiff need not plead all of the elements of his claims or all of the facts necessary to support them. *See, e.g., Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166–67, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir.2002). Rather, a complaint need only contain a "short and plain statement" that gives "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citation omitted). Chapman's complaint satisfies this standard.

To state a claim under § 1983, a plaintiff must allege that the defendants acted under color of state law to deprive him of specific constitutionally protected rights. *Case v. Milewski,* 327 F.3d 564, 566 (7th Cir.2003). Chapman alleges that the defendants acted under color of law, and violated several of his constitutional rights. First, he contends that the defendants interfered with his right to free speech. As the basis for this claim he details how the defendants interfered with his leafleting by ordering him to stop circulating, confiscating the flyers he had already distributed, and enlisting the help of local police to restrain him.

■ The district court, relying on a Matteson anti-littering ordinance, concluded that the defendants were merely enforcing reasonable time, place, and manner restrictions on Chapman's speech. That conclusion cannot be sustained for a number of reasons, not the least of them that the ordinance merely prohibits depositing handbills in public places and on unattended vehicles but does not bar distribution to individuals in public places or cars and imposes no restriction on leafleting at private homes. Matteson, Illinois Code § 130.07. Taking him at his word, Chapman's leafleting activities were not confined to placing his flyer on unattended vehicles; indeed, he claims that the defendants not only stopped him from leaving his pamphlet at private residences but also replaced the pamphlets he left at homes with their own. Moreover, Chapman's leafleting extended to Flossmoor, presumably outside of the reach of Matteson's ordinance.

The district court's conclusion is also erroneous because the court engaged in impermissible factfinding to determine on a motion to dismiss that the defendants had acted to enforce the ordinance rather than, as Chapman alleges, because of racial animus and a desire to suppress his political views. By Chapman's account the defendants never mentioned the ordinance when interfering with his leafleting, and since they deny acting under color of state law, it is unclear to us how–as ordinary citizens–they could also have been acting with the purpose of enforcing this ordinance.

Finally, in concluding that the ordinance placed reasonable time, place, or manner restrictions on Chapman's speech, the district court reasoned that he had sufficient alternative channels of communication open to him, specifically the ability to "distribute his pamphlets to passersby or to canvass door-to-door." But as Chapman correctly points out on appeal, his complaint specifically alleges that the defendants *stopped* him from circulating his flyers in these alternative ways. Whether Chapman was able to distribute his flyers to willing recipients will likely be an inte-

gral fact in resolving his First Amendment claim under § 1983, *see Schneider v. New Jersey*, 308 U.S. 147, 162, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir.1998) (declaring as facially overbroad an ordinance similar to Matteson's), but at such an early stage in the litigation the court should have drawn any inferences from the facts in Chapman's favor, *see Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703, 709 (7th Cir.2003).

Chapman also says that the defendants violated his right to equal protection. To the extent that his claim rests on the theory that he was treated differently based on his political beliefs or opposition to particular political candidates, that contention seems to be more appropriately litigated as part of his First Amendment claim. *Cf. Graham v. O'Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (substantive due process not appropriate vehicle for litigating claim when a more specific amendment is applicable). But his allegation that the defendants interfered with his political activities on the basis of his race states an equal protection claim. *See Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 262 (7th Cir.1999) (plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular group).

In addition, Chapman claims that the defendants violated his rights to due process and privacy, but only the latter finds any hint of support in his complaint. As to privacy, Chapman's complaint states a claim that he was deprived of his Fourth Amendment right not to be subjected to unreasonable searches or seizures. *See Roach v. City of Evansville*, 111 F.3d 544, 550 (7th Cir.1997). Chapman says that Officer Wilson's stated reasons for stopping him were that the flyer was "slanderous" and that he needed to register with the village before circulating it in any case. The defendants have never pointed to any such ordinance, and without knowing whether such a registration requirement exists, the district court could not assume that Wilson stopped him for a valid reason. The district court's conclusion that a different ordinance, the one prohibiting littering, provided reasonable suspicion to stop Chapman relies on the factual conclusion that the reason for the stop was the littering ordinance, and nothing in the complaint mandates such a factual conclusion.

Accordingly, we VACATE the district court's dismissal of Chapman's complaint for failure to state a claim and REMAND for further proceedings.