**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2022
Decided August 9, 2022

*Before*

DIANE S. SYKES, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-3275

| | |
|---|---|
| ANDREA RAILA,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>COOK COUNTY OFFICERS<br>ELECTORAL BOARD AND ITS<br>MEMBERS, et al.,<br>    *Defendants-Appellees*. | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division.<br><br>No. 19-cv-7580<br><br>Thomas M. Durkin,<br>*Judge*. |

## O R D E R

The Cook County Electoral Board ("the County Board"), comprised of the Cook County Clerk, the State's Attorney, and the Clerk of the Circuit Court, administers elections for Cook County and the City of Chicago. The Chicago Board of Election Commissioners ("the City Board") manages elections only for the City of Chicago (collectively referred to as the "Election Authorities"). Andrea Raila was a candidate for Cook County Assessor in the 2018 Democratic primary election.

In December 2017, Raila filed her nomination petitions for the Democratic ballot with significantly more signatures than required to qualify for the ballot. Several people objected, and the County Board assigned a hearing officer who initially determined that Raila submitted enough valid signatures but later concluded that eleven notaries engaged in notary misconduct and ten notaries, including Raila, engaged in fraud. The officer recommended, and the Election Authorities agreed, that the notarized sheets be stricken, leaving Raila with fewer signatures than necessary to appear on the ballot. As a result, the County Board printed 1 million green notices stating that a vote for Raila would not count; ordered each election supply box ("Election Supply Carriers" or "ESCs") to include these green notices along with several posters repeating the message; mailed 40,000 absentee voter notices specifying that votes for Raila would not count; and posted a green notice on the Cook County Clerk's Facebook page. Additionally, the Chicago Board placed full-page ads in two major newspapers, and the Cook County Clerk posted a Facebook video of her holding a green notice.

On March 14, six days before the primary, the state appellate court unanimously overturned the Board's decision. The objectors could not prove fraud by clear and convincing evidence, and the signatures should have counted. The court then remanded "solely for the purpose that the Board fashion an appropriate remedy to ensure that votes cast for Raila … are counted." In response, the County Board printed new black-and-white notices, in contrast to the green ones, which removed the statement that votes for Raila would not count. The new notices were given to election judges before the primary with the instruction to distribute them—but no instruction was given to remove the green notices or posters. The Chicago Board did not run any new ads correcting its prior representation, and for some time, the Cook County Clerk's Facebook page still displayed the incorrect green notice.

The day before the primary, March 19, the Cook County Clerk held a press conference to explain the mistake. The Clerk also informed Raila that emails would be sent to election judges instructing them to give out only the correct black-and-white notices.[1]  Additionally, a preprogrammed text message was supposed be sent to all election judges instructing them to give out the correct notices. On the day of the primary, however, the message sent said the opposite: "This is a message from Election Central—Hand Out the Green 'NOTICE to All Democratic Voters' Thank you. Chicago BOE." As a result, for several hours the next morning, voters were given the wrong

---

[1]  Raila alleges that many polling places had not received the corrected notices, and the promised emails were either not sent, not received, or ignored.

notices. Eventually, a correct message was sent, and the election authorities held another press conference apologizing for the error.

Raila lost the election and sued in federal court. She filed two complaints, both of which were dismissed at the 12(b)(6) stage with leave to amend. This case concerns her third amended complaint against Cook County Officers Electoral Board, its members, the Cook County Clerk, and the Board of Election Commissioners and its members, all sued in their official capacities. She asserts violations of her First Amendment right to free association and her Fourteenth Amendment right to be treated like "other similarly situated individuals, namely the other candidates for Assessor." She requested monetary damages and an injunction "requiring the appointment of an impartial monitor to oversee elections in Cook County and City Chicago until the Defendants can adequately establish their ability to conduct free and fair elections." The district court granted defendants' motion to dismiss for failure to state a claim.

Raila argues on appeal that she adequately pleaded a claim for relief based on the election authorities' alleged violations of her First and Fourteenth Amendment rights. We review the dismissal of a complaint for failure to state a claim de novo, construing all allegations as true and drawing reasonable inferences in favor of the plaintiff. *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512–13 (7th Cir. 2020) (quoting *League of Women Voters v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014)).

We begin with our jurisdiction over Raila's injunction claim.[2] A plaintiff must satisfy Article III's standing requirements for each requested form of relief: "(1) a concrete and particularized injury that is actual or imminent, (2) traceable to the defendant's conduct, and (3) can be redressed by judicial relief." *Hero v. Lake Cnty. Election Bd.*, 2022 WL 3040109, *3 (7th Cir. Aug. 2, 2022) (quoting *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022)). Here, Raila's injunction claim falters because she has not alleged an "actual or imminent" injury. Raila has not, of course, suffered an injury yet for the next election, so no "actual" injury has occurred. Our focus then turns to the alleged "imminent" injury.

A plaintiff seeking "prospective relief against a harm not yet suffered … must establish that [s]he 'is immediately in danger of sustaining some direct injury as the

---

[2] Raila may have abandoned her request for injunctive relief at oral argument, stating "we withdraw" the injunction issue in response to questions regarding her standing to pursue it. But we address it nonetheless for completeness.

result of the challenged official conduct,'" and that "'the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical.'" *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). A challenge to a statute or regulation is often justiciable because the "existence of the statute constitutes the government's commitment to prosecute in accordance with it." *Bell*, 697 F.3d at 451; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). A plaintiff alleging some "criminal or unconstitutional behavior" based on official conduct that has yet to transpire, however, faces a steeper climb: "the putative injury typically proves too remote or attenuated to sustain our jurisdiction under Article III." *Bell*, 697 F.3d at 451. "[A]bsent 'great and immediate' irreparable injury, 'the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers ….'" *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 397 (7th Cir. 2019) (quoting *Lyons*, 461 U.S. at 112).

Raila has not established an "imminent harm." She challenges an executive action, not an already existing statute or regulation, that is unlikely to occur again. Moreover, she has not declared her intention to run again; the board's membership might change; a state appellate court has already ruled on the exact dispute; and the "balance between state and federal authority" counsels restraint, particularly for an election governed by state law and more frequently adjudicated in state courts. Thus, she does not have standing to pursue her injunction claim.

As for her damages claim, Raila is suing the Election Authorities and its members only in their official capacities. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (holding that a suit "against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond"). Under the strict standards for municipal liability, a plaintiff can sue a municipality only for "*its own* violations of the federal Constitution and laws," not the actions of its agents. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (emphasis in original) (quoting *First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021)); *see generally Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). Beyond the threshold deprivation of a federal right, a successful claim requires a municipal action, municipal fault, and "moving force" causation. *Dean*, 18 F.4th at 235. We start with the first element:

> There are at least three types of municipal action that may give rise to municipal liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is

so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. Inaction, too, can give rise to liability in some instances if it reflects a conscious decision not to take action.

*Id.* (internal citations omitted).

Assuming an underlying constitutional violation, Raila has not established a municipal action to state a successful *Monell* claim. There was no alleged express policy by the County and City Boards that deprives candidates of their electoral rights, nor a widespread practice, nor an allegation that some election official within these organizations had final policymaking authority. *See id.* Similarly, Raila does not claim inaction—in fact, she argues the Election Authorities willfully interfered with her candidacy.

Moreover, Raila has not alleged deliberate indifference on the part of the Election Authorities. "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985); *see also Dean*, 18 F.4th at 236 ("[T]he Supreme Court made clear that a plaintiff seeking to hold a municipality liable for a facially lawful policy generally must prove a prior pattern of similar constitutional violations resulting from the policy."); *Calderone v. City of Chicago*, 979 F.3d 1156, 1164 (7th Cir. 2020) ("One single incident cannot suffice; rather, [the plaintiff] must show 'a series of constitutional violations.'" (quoting *Est. of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)). Raila has not identified an unconstitutional policy, and the allegations here show only one incident around a single election, not a pattern of alleged unconstitutional behavior resulting from a possible municipal action. *See, e.g., Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) ("*Monell* claims based on allegations of an unconstitutional municipal practice or custom … normally require evidence that the identified practice or custom caused multiple injuries."); *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997) (noting that liability can be shown through an allegation of an injury "caused by a person with final policymaking authority" that requires proof beyond a single incident though the parties agreed "there was [not] a constitutional deprivation by a person with final decision-making authority"); *see also Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 755 (5th Cir. 1993) ("[W]here … a policy in some sense causes, but does not compel, a constitutional violation, plaintiffs must establish that the particular harm-producing

deficiency 'resulted from conscious choice,' that is, they must supply 'proof that the policymakers deliberately chose [measures] which would prove inadequate.'" (quoting *Tuttle*, 471 U.S. at 823–24). The Boards may have committed numerous errors, but these errors do not give rise to *Monell* liability.

AFFIRMED