Candy REX, Plaintiff,

v.

CITY OF MILWAUKEE, Rudolph Verhoeven, Gilbert Gwinn, and State of Wisconsin Department of Health & Family Services,[1] Defendants.

No. 03–C–0109.

United States District Court, E.D. Wisconsin.

June 10, 2004.

---

1. Defendant State of Wisconsin Department of Health & Family Services is a party by virtue of its interest as a partial subrogee.

Daniel Stevens, for Plaintiff.

Susan Lappen, Richard Victor, for Defendants.

### *DECISION AND ORDER*

ADELMAN, District Judge.

Plaintiff Candy Rex brings this action under 42 U.S.C. § 1983 alleging that defendants, Rudolph Verhoeven and Gilbert Gwinn, City of Milwaukee police officers, violated her rights under the Fourth and Fourteenth Amendments by employing excessive force in the course of arresting her. Plaintiff also alleges that the City of Milwaukee violated her rights by failing to properly train the officers concerning proper arrest procedures. The action was commenced in state court and defendants removed it based on federal question jurisdiction. *See* 28 U.S.C. § 1331. Before me now are the motions for summary judg-ment brought by defendants Verhoeven, Gwinn and the City.

### I. FACTS

On July 8, 2002 at about 12:30 p.m., a City of Milwaukee Alderman, Robert G. Donovan, called the police and reported that he had been solicited by a woman in the area of South 21st Street and Greenfield Avenue. Verhoeven and Gwinn were dispatched to the scene where they observed plaintiff, whose clothes matched those described by Donovan, run into an adjacent apartment building. The officers entered the building and noticed that the door to a second floor apartment was open, and that plaintiff and a man were seated at a table in the apartment. Gwinn entered the apartment and directed plaintiff to go into the hallway and speak to Verhoeven. Plaintiff did so, and Verhoeven advised her that she was being arrested for loitering for purposes of prostitution.

Verhoeven then grabbed plaintiff's right arm in order to cuff her hands behind her back. Plaintiff states that she told him that she had a disability that prevented her from placing her hands behind her back. She did, in fact, have such a disability. Plaintiff states that when she advised the officer of her disability, he told her to knock it off and continued to pull on her arm. She states that she repeated that she could not place her hands behind her back because she had undergone shoulder fusion, but Verhoeven ignored her statement, continued to yank on her arm and told her that if she didn't knock it off he would charge her with resisting. Plaintiff states that she did not resist. Verhoeven denies that plaintiff informed him that she had a disability.

Gwinn states that he heard Verhoeven tell plaintiff to stop resisting, at which point he stepped into the hallway, grabbed plaintiff's left arm and started to pull it

behind her back. When he did this, everyone heard a pop, and plaintiff collapsed on the floor. The officers called an ambulance, and plaintiff was conveyed to a hospital where it was determined that she had suffered an epileptic seizure and a broken arm. As a result of the broken arm, she underwent multiple surgeries.

The officers state that an arrestee's hands are typically cuffed behind the back but, if the arrestee has a disability that prevents such cuffing, his or her hands may be cuffed in front. The officers ultimately did not arrest plaintiff but issued citations for loitering for purposes of prostitution and resisting arrest. Plaintiff pleaded no-contest to the former charge and was acquitted after trial of the latter.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine," the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be "material," it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), courts should act with caution in granting summary judg-

ment, *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The movant may meet its burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party's initial burden is met, the nonmoving party must go beyond the pleadings and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 322–23, 106 S.Ct. 2548. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).

In evaluating a motion for summary judgment, the court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

## III. DISCUSSION

In order to prevail on a § 1983 claim, plaintiff must show that defendants (1) deprived her of a federal constitutional right (2) while acting under color of state law. *See, e.g., Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir.1996). It is undisputed that, in the present case, the officers acted

under color of state law. I therefore turn to the issue of whether plaintiff was deprived of her constitutional right not to be subjected to excessive force.

## A. Excessive Force

■ The Fourth Amendment protects persons against unreasonable searches and seizures. U.S. Const. amend. IV. All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop or other "seizure" of a citizen who is not in custody are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A seizure occurs whenever an officer restrains the freedom of a person to walk away. *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Thus, when the officers attempted to handcuff plaintiff, they seized her within the meaning of the Fourth Amendment.

■ Reasonableness under the Fourth Amendment involves balancing the extent of the intrusion against the need for it. *Garner*, 471 U.S. at 5, 105 S.Ct. 1694. Determining whether acts are reasonable requires careful attention to the facts and circumstances of the case. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Three important factors to consider are the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting tò evade arrest by flight. *Id.; see also Frazell v. Flanigan*, 102 F.3d 877, 882–83 (7th Cir. 1996), *abrogation on other grounds recognized by McNair v. Coffey*, 279 F.3d 463, 464–66 (2002).

■■ The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force necessary in a particular situation. *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. The reasonableness inquiry is an objective one: whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force, nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *Id.*

■ In the Seventh Circuit, the test of whether a search and seizure challenged under the Fourth Amendment is unlawful is the same as the test of negligence at common law: unreasonableness in the circumstances. *Villanova v. Abrams*, 972 F.2d 792, 796 (7th Cir.1992). In *Villanova*, Judge Posner expressed this test in terms of Learned Hand's famous formula for negligence, $B<PL$, where $B$ is the burden of precautions, $L$ is the loss if there is an accident that the precautions could have prevented, and $P$ is the probability of an accident if the precautions are not taken. *Id.; United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947). Thus, I will analyze the officers' actions in light of the *Graham* factors and the Hand formula and seek to determine whether they were objectively reasonable in the circumstances.

■ Applying the *Graham* factors, I note, first, that plaintiff was charged with a minor offense—loitering for purposes of prostitution. Such offense is not punishable by incarceration. Because the charge involved only an ordinance violation, the officers could have initiated it by issuing

plaintiff a citation instead of arresting her, *see* Wis. Stat. § 800.01(a), which is what they did after plaintiff was injured. Second, plaintiff was unarmed and posed no threat to the safety of the officers or others. Third, plaintiff states that she did not resist arrest. The officers dispute this but, at this stage of the case, I must accept plaintiff's testimony as true. Thus, the *Graham* factors weigh against granting the officers' summary judgment motion.

Turning to the details of the incident, plaintiff states that when Verhoeven attempted to cuff her, she told him that she had a disability that prevented her from placing her hands behind her back. She states that Verhoeven ignored her statement, told her to knock it off and continued to pull on her arm. She states that she then repeated that she could not put her hands behind her back because her shoulders had been fused, but that Verhoeven again ignored her and said that if she didn't knock it off she would be charged with resisting. At this point, Gwinn grabbed and pulled plaintiff's left arm, thus causing plaintiff to be injured.

Taking plaintiff's testimony as true, a reasonable jury could conclude that both Verhoeven and Gwinn acted unreasonably. Even assuming that the decision to arrest plaintiff was reasonable, a reasonable jury could conclude that once she advised Verhoeven that she had a physical disability that prevented her from placing her hands behind her back, he should have stopped trying to cuff her hands behind her back, at least until determining whether such cuffing would injure her. Alternatively, a reasonable jury could conclude that Verhoeven should have cuffed plaintiff's hands in front of her body. A reasonable jury could also find that, by continuing to struggle with plaintiff and threatening to charge her with resisting arrest, Verhoeven precipitated Gwinn's involvement and thus causally contributed to plaintiff's injury.

A reasonable jury could also find that Gwinn acted unreasonably. Based on his statement that he heard Verhoeven tell plaintiff to stop resisting, it could reasonably be inferred that he also heard plaintiff inform Verhoeven of her disability. Gwinn indicates that the door between the apartment and the hallway was open, and that he was not far from plaintiff and Verhoeven. Further, a reasonable jury could conclude that Gwinn acted unreasonably when he grabbed and pulled plaintiff's left arm. Plaintiff was charged with a minor offense, neither Verhoeven nor anyone else was in danger, and plaintiff states that she was not resisting. Thus, a reasonable jury could conclude that Gwinn used more force than the circumstances required.

Applying the Hand formula, $B<PL$, also suggests that the officers' summary judgment motion should be denied. The burden on the officers of ceasing their attempt to cuff plaintiff's hands behind her back until ascertaining her physical condition was zero. Such a cessation would not have increased the possibility that the officers or the public would be harmed. Further, the probability of harm occurring if the officers failed to heed plaintiff's statements was high. If plaintiff was telling the truth about her disability, attempting to cuff her behind her back was likely to cause harm. Finally, the loss that the officers could have prevented by heeding plaintiff's warning was significant. Plaintiff suffered serious injury as the result of the incident.

For the foregoing reasons, a reasonable jury could find that Verhoeven and Gwinn employed excessive force in their dealings with plaintiff.

**B. Qualified Immunity**

The officers argue that they are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In determining whether qualified immunity applies, I apply a two step sequential test. The initial inquiry is whether, taking the facts in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If there was no violation, there is no need for further inquiry. *Id.* at 201, 121 S.Ct. 2151. In the present case I have already determined that, taking the evidence in the light most favorable to plaintiff, the officers violated plaintiff's Fourth Amendment right to be free of excessive force.

▮▮▮ The second sequential step is to ask whether the right was "clearly established" at the time of the alleged violation. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. The burden of establishing the existence of a clearly established constitutional right is on the plaintiff, and it is a heavy one because qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Hughes v. Meyer,* 880 F.2d 967, 971 (7th Cir.1989) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). A plaintiff "can establish a clearly established constitutional right by showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality." *Brokaw v. Mercer County,* 235 F.3d 1000, 1022 (7th Cir.2000). In the present case,

as an objective matter, on July 8, 2002, a reasonable police officer would have known that, if an unarmed woman suspected of loitering for the purpose of prostitution informed him that because of a physical disability she could not place her hands behind her back, it was unreasonable to attempt to cuff her hands behind her back without making further inquiry. Further, a reasonable police officer would have known that it was unreasonable to grab and pull the arm of an unarmed woman being arrested by another officer for a minor offense and not resisting arrest.

Thus, if the facts of the case are as plaintiff attests, the officers are not entitled to qualified immunity. *See DuFour-Dowell v. Cogger,* 152 F.3d 678, 680 (7th Cir.1998) (holding that officers were not entitled to qualified immunity where facts alleged by plaintiff established Fourth Amendment violation).

## C. Failure to Train

▮▮▮ Plaintiff also claims that the City is liable to her for failing to properly train the officers. A municipality is liable under § 1983 if its custom, policy or practice causes a plaintiff's injury. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under some circumstances, a city can be liable under § 1983 for failure to train. *See City of Canton v. Harris,* 489 U.S. 378, 387–88, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, the inadequacy of police training may serve as the basis for § 1983 liability only where it amounts to deliberate indifference to the rights of persons with whom the police come in contact. *Id.* at 388, 109 S.Ct. 1197. Only then can a failure to train be thought of as a city policy or custom that is actionable under § 1983. *Id.* at 389, 109 S.Ct. 1197.

▮▮▮ In the Seventh Circuit, in a failure to train case, the need for enhanced

training must be so obvious, and the inadequacy of training so likely to result in the violation of constitutional rights, that a jury could reasonably attribute to policymakers a deliberate indifference to training needs. *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1298 (7th Cir.1989). A plaintiff may prove her case by showing that the municipality failed to train its employees to handle a situation likely to recur and with obvious potential for a constitutional violation, *see Robles v. City of Fort Wayne,* 113 F.3d 732, 735 (7th Cir. 1997), or that the municipality failed to provide further training after learning of a pattern of constitutional violations by the police, *see Palmquist v. Selvik,* 111 F.3d 1332, 1346 (7th Cir.1997).

In the present case, plaintiff alleges that the City was deliberately indifferent to her rights by failing to train Verhoeven and Gwinn concerning proper arrest procedures. However, plaintiff presents virtually no evidence regarding the City's training of police or of any circumstances indicating that such training was inadequate. Thus, the record contains insufficient evidence to enable a reasonable jury to conclude that the City's training was so inadequate as to amount to deliberate indifference. Therefore, the City's summary judgment motion will be granted.

## IV. CONCLUSION

Based on the foregoing,

**IT IS HEREBY ORDERED** that defendants Verhoeven and Gwinn's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that the City of Milwaukee's motion for summary judgment is **GRANTED**, and the City is **DISMISSED** as a defendant.