**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 9, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBERT THOMPSON,

      Plaintiff-Appellant,

v.

CITY OF SHAWNEE, an Oklahoma
municipal corporation; TECUMSEH
AUTO SALES & INVESTMENTS,
LLC, a/k/a Tecumseh Auto Sales,
LLC; ANTHONY GRASSO; DIANN
LARQUE,

      Defendants-Appellees.

No. 11-6051
(D.C. No. 5:09-CV-01350-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

Robert Thompson pleaded guilty to one count of obtaining property through

false pretenses for purchasing certain t-posts (fence posts so named because of

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

their shape) with a bad check.  He then brought a civil lawsuit challenging a police officer's seizure of some of the t-posts from his repossessed pickup truck. He also asserted claims regarding the repossession and seizure of the posts against both the dealership who had sold him the truck and its employee who handled the repossession.  He now appeals from the district court's judgment in favor of defendants.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## *Background*

In early November 2008, Thompson bought a pickup truck from Tecumseh Auto Sales & Investments, LLC.  Later, on November 14 and 15, after having funded his bank account with a counterfeit check, he wrote two bad checks to Lumber 2 Home and Ranch for several hundred t-posts.

On November 19, a caller reported to City of Shawnee police officer Anthony Grasso that in a shed on her daughter's property were t-posts bought with a stolen check. The daughter consented to a search, which revealed two hundred t-posts.  The daughter's boyfriend told Grasso the t-posts were Thompson's and produced a Lumber 2 receipt to show they were not stolen.

The next day, November 20, Grasso interviewed Lumber 2's manager, who confirmed the purchase, but told Grasso he did not know whether Thompson's checks were good.  He also gave Grasso the license number of the truck Thompson used to transport the t-posts.  Upon checking records Grasso discovered the truck was still registered in the name of Tecumseh's owners.

-2-

Sometime after Grasso completed his records check, the Lumber 2 manager contacted him reporting Thompson's checks were returned for insufficient funds.

Grasso then visited Tecumseh. He told Tecumseh employee Diann Larque that Thompson was under criminal investigation and had used the truck in some of the possible crimes. Grasso also told Larque that Thompson did not appear to be a truck driver, contrary to what he reportedly told the dealership. Larque said she might repossess the truck. Thereupon Grasso asked her to call him if she did repossess it and it contained t-posts, since he was investigating Thompson for a fraudulent purchase of t-posts. As a result of the conversation, Larque decided to repossess the truck. The repossession was accomplished (with Thompson's consent) that day. Thompson left thirty-five t-posts in the truck's bed.

On November 21, Grasso learned the check Thompson had deposited to his account was counterfeit. Larque consented to Grasso's search of the repossessed truck at Tecumseh. Grasso seized the thirty-five t-posts, and Larque signed a receipt acknowledging the seizure.

Thompson pleaded guilty to one count of obtaining property through false pretenses for one of the two bad checks written to Lumber 2. He received a seven-year suspended sentence and was placed on probation. He then filed suit in Oklahoma state court against Grasso, the City of Shawnee (the City), Tecumseh, and Larque. The case was removed to federal court based on Thompson's 42 U.S.C. § 1983 claims of constitutional violations by Grasso and the City. The

-3-

district court dismissed some claims and granted summary judgment to defendants on others. Thompson appeals.

*Analysis*

Thompson argues the district court erred (1) in concluding the plain view doctrine justified the seizure of the t-posts from the truck (thus rejecting his Fourth Amendment claim against Grasso and, derivatively, the City); (2) in granting summary judgment on his Fourteenth Amendment claim (continuing detention of his property without adequate process); and (3) in granting summary judgment for Grasso and the City on his state-law claims. He also claims it abused its discretion in dismissing the state-law claims against Tecumseh and Larque rather than remanding them to state court.

**1. Fourth Amendment**

Thompson initially complained that Grasso violated his Fourth Amendment right to be free of unreasonable searches and seizures by searching the truck and seizing the t-posts from it. On appeal, however, he challenges only the seizure, arguing, contrary to the trial court's reasoning, that Grasso is not entitled to qualified immunity. He says the plain-view doctrine is not applicable.

Our review is de novo, viewing the evidence in the light most favorable to Thompson. *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007). Because this is a qualified-immunity analysis, Thompson's must show Grasso violated a clearly-established constitutional right. *See id.* "Although the Fourth

-4-

Amendment generally requires officers conduct searches and seizures pursuant to a warrant, officers may seize evidence in 'plain view' without a warrant." *United States v. Castorena-Jaime*, 285 F.3d 916, 924 (10th Cir. 2002). "A warrantless seizure of evidence is sustainable if (1) the police officer was lawfully located in a place from which to plainly view the item; (2) the officer had a lawful right of access to the item; and (3) it was immediately apparent that the seized item was incriminating on its face." *Id.*

Thompson focuses on the third requirement, the incriminating nature of the t-posts. He argues the district court failed to find Grasso had probable cause for the seizure. *See id.* ("An item's incriminating nature is immediately apparent if the officer had probable cause to believe the object was contraband or evidence of a crime." (internal quotation marks omitted)). He also argues the existence of probable cause in a civil case is a question for the jury. *See DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990) ("We have long recognized that it is a jury question in a civil rights suit whether an officer had probable cause to arrest."). But it is a jury question only "if there is room for a difference of opinion," *id.* (internal quotation marks omitted); *see also Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007), and here there is no such room. Thompson suggests the posts' incriminating nature was not immediately apparent to Grasso when he seized them, but his argument ignores a wealth of other information Grasso had uncovered: Grasso knew Thompson had funded his account with a counterfeit

-5-

check and the checks to Lumber 2 had been dishonored.[1]  He also knew what the t-posts from Lumber 2 looked like.  There can be no "difference of opinion" about whether the incriminating nature of the t-posts was evident to Grasso – he had probable cause to seize them as evidence.  The district court did not err.

## 2.    Fourteenth Amendment

Thompson urges upon us his claim of a Fourteenth Amendment violation from the continued detention of the t-posts.  As the district court held, however, there is no Fourteenth Amendment claim where there is an adequate state post-deprivation remedy.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989).  Oklahoma provides adequate post-deprivation remedies, such as causes of action for conversion and replevin, as well as a statutory scheme for returning property seized as evidence, *see* Okla. Stat. Ann. tit. 22, § 1321.[2]

---

[1]     Thompson argues the date the checks were rejected for insufficient funds is a genuine issue of material disputed fact.  But the evidence he proffers is insufficient to create an issue of fact regarding whether Grasso was informed, before he visited Tecumseh, that the checks were denied for insufficient funds.

[2]     Thompson's inability to prevail on his conversion and replevin claims (discussed below) does not mean that Oklahoma's remedies are inadequate for purposes of determining the existence of a Fourteenth Amendment claim.

### 3. State-Law Claims Against Grasso and the City

Thompson challenges the summary judgment in favor of Grasso and the City on his state-law claims. "We review summary judgment decisions de novo, applying the same legal standard as the district court." *Willis v. Bender*, 596 F.3d 1244, 1253 (10th Cir. 2010) (internal quotation marks omitted). "[W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* at 1254 (internal quotation marks omitted).

Thompson first complains the district court handled his state-law claims against the various defendants differently, granting summary judgment to Grasso and the City while dismissing the state-law claims against Tecumseh and Larque. We reject this premise of error. "The court conducted a separate analysis for all of [plaintiff's] claims and decided that some warranted supplemental jurisdiction and others did not. This is proper under 28 U.S.C. § 1367 and not inconsistent with precedent." *Nielander*, 582 F.3d at 1172 (citation omitted).

Thompson also appeals from the district court's summary judgment on his conversion and replevin claims. It decided the conversion claim failed because Thompson could not establish Grasso wrongfully asserted dominion over the t-posts. *See Welty v. Martinaire of Okla., Inc.*, 867 P.2d 1273, 1275 (Okla. 1994) ("Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."). Similarly, the court decided Thompson's replevin claim failed because the property was not

-7-

being wrongfully detained, and because "in light of Plaintiff's guilty plea to the charges stemming from the checks related to the t-posts, the undisputed facts do not establish that Plaintiff is entitled to immediate possession of the property." Aplt. App., Vol. 2 at 558. *See* Okla. Stat. tit. 12, § 1571 (listing, among other elements of replevin, "the plaintiff is the owner of the property . . . and . . . is entitled to its immediate possession" and "the property is wrongfully detained by the defendant"). For substantially the reasons discussed by the district court, we affirm the summary judgment for defendants Grasso and the City on the conversion and replevin claims.

Thompson also argues the district court erred in granting summary judgment to Grasso on his claim of tortious interference with contract.[3] The district court held there was no evidence Grasso used improper or unfair means, no evidence he induced a breach of the contract, and no evidence he acted intentionally to cause the repossession. *See Tuffy's Inc. v. City of Okla. City*, 212 P.3d 1158, 1165 & n.34 (Okla. 2009) (stating one of the elements of tortious interference with contract is defendant's intentional interference with the contract through improper or unfair means). Thompson argues a jury could find Grasso used improper or unfair means because Grasso lied in his conversation with Larque. We disagree. Although we view the evidence in the light most favorable

---

[3] The district court dismissed the tortious interference claim against the City for failure to state a claim. Thompson does not appeal this decision.

-8-

to Thompson, no reasonable jury could conclude the statements allegedly made by Grasso to Larque constituted unfair or improper means.[4]

**4.     State-Law Claims against Tecumseh and Larque**

The district court declined to exercise supplemental jurisdiction (under 28 U.S.C. § 1367(c)(3)) and decide Thompson's state-law claims against Tecumseh and Larque "[g]iven the lack of any meaningful activity by or against Defendant Tecumseh Auto Sales and the failure to properly and timely serve Defendant Larque." Aplt. App., Vol. 2 at 559. Instead, it dismissed those claims without prejudice. "We review a denial of supplemental jurisdiction for abuse of discretion." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1172 (10th Cir. 2009).

Thompson first contends the district court erred in concluding Larque had not been served with process and Tecumseh did not participate in the suit. But any error in this regard would be harmless. Having granted judgment on the federal claims, the court could decline to exercise jurisdiction under § 1367(c) even if it recognized that Larque had been served and Tecumseh had participated.

Relying on 28 U.S.C. § 1447(c), Thompson further argues the district court erred in dismissing the claims rather than remanding them to the state court. But

---

[4]     Because Thompson has failed to establish the use of unfair or improper means, we need not consider his argument that the district court erred in concluding there was no evidence Grasso intentionally interfered with the contract.

this case is not governed by § 1447(c), which requires remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." The district court did not lack jurisdiction over this action; it had removal jurisdiction under 28 U.S.C. § 1441(a), because of federal question jurisdiction under 28 U.S.C. § 1331 on some of the claims and supplemental jurisdiction over the others by virtue of § 1367. Further, the court's decision disposing of the federal claims did not divest it of jurisdiction to decide the state-law claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866-67 (2009).

The district court had discretion either to remand the claims to the state court or to dismiss them. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 354, 357 (1988); *Robles v. City of Fort Wayne*, 113 F.3d 732, 738 (7th Cir. 1997). Therefore, the mere decision to dismiss is no grounds for reversal.[5]

AFFIRMED. Appellant's motion to proceed *in forma pauperis* is GRANTED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge

---

[5] Thompson focuses on whether dismissal was an authorized remedy in the first instance. Because he has not discussed how the decision to dismiss the claims may have adversely affected him, we need not consider whether the district court abused its discretion in selecting dismissal over remand.